## BANKS *v.* BANKS.

[79 South. 841, Division B.]

1. DIVORCE. *Recrimination. Character of proof.*
The rule is well established that to defend a divorce on the ground of recrimination, the offense charged against complaintant must be established by the same character of proof that it would take to grant a divorce, were the defendant the complaining party, and no defense charged against the said complaining party.

2. DIVORCE. *Recrimination. Character of proof.*
Where adultery of the complainant is set up by the defendant, as a defense in a divorce suit, and such defense is sought to be proven by circumstantial evidence, the circumstances must be proven with reasonable certainty, and the circumstances so proven must be such that the conclusion sought to be established follows logically from the facts. If there are two or more reasonable theories which may be drawn from the facts proven, the proof will be insufficient, because to invest mere circumstances with the force of truth, the conclusion must not only be logical, and tend to prove the facts charged, but must be inconsistent with a reasonable theory of innocence.

3. DIVORCE. *Adultery. Evidence.*
Under the facts in this case, as set out in its opinion, the court held that the evidence was insufficient to establish adultery by the complainant.

4. DIVORCE. *Restricting proof to pleadings.*

 In a divorce suit where the defendant charged adultery of the complainant, as a defense, the proof should be restricted largely to the pleadings, and parties not be required to run the gauntlet of all rumors of a community pertaining to his life and character, at least without notice and preparation to meet such charges and evidence.

5. EVIDENCE. *Circumstantial evidence.*

 Acts may be established by circumstances, but the circumstances must be those within the personal knowledge of the witnesses.

6. DIVORCE. *Appeal. Incompetent evidence. Presumption of effect.*

 Some latitude should be allowed a chancellor in admitting evidence, on the theory that he can discriminate between competent and incompetent evidence, but where the chancellor admits incompetent evidence, it should be excluded before judgment, and if he admits evidence and does not exclude it, it would be fair to assume that the evidence had some effect in influencing his judgment.

7. DIVORCE. *Alimony. Amount.*

 Where a home was broken up through the fault of the defendant wife the most that the husband should be required to furnish her as alimony would be necessary support, and where there are no children, the further awarding her the sole control of a ten-room house worth thirteen or fourteen thousand dollars was an excessive allowance.

APPEAL from the chancery court of Bolivar county. HON. JOE MAY, Chancellor.

Bill by Charles Banks against T. O. Banks, in which defendant made her answer a cross-bill, asking for alimony but not demanding a divorce for herself. From a decree denying divorce to complainant, awarding alimony to defendant, and setting apart complainant's residence to defendant, complainant appeals.

The facts are fully stated in the opinion of the court.

ETHRIDGE, J., delivered the opinion of the court.

Charles Banks filed a bill against T. O. Banks for divorce in the chancery court of Bolivar county, Second district, alleging that they were married in 1892, but

that their relations throughout were unpleasant and his wife was of disagreeable disposition, and that in the year 1914 she assaulted him with a butcher knife in their home, and as a result he could not stay at his home, living with defendant; that he resided at another place in the same town for about two years after this time, and that his wife again assaulted him, striking him with an inkstand, almost severing his ear from his head, and drew a knife on him, and frequently abused him with cursing and other offensive language; and prays for a divorce from the bonds of matrimony. T. O. Banks filed an answer, denying the allegations of the bill and recriminating, charging that Charles Banks had himself violated the marriage contract by having improper and adultrous relations with a woman named Lea; the charge being in this language:

"Respondent would show: That for a long time prior to the 20th day of November, 1916, the said complainant had been guilty of improper relations with Lelia Lea, a woman who had formerly been married and lived at Mount Bayou, but who had for some time prior to the 20th day of November, 1916, been seperated from her husband and was living at No. 740 on Walker avenue, in the city of Memphis, Tenn., that complainant habitually visited her there, and contributed to her a large part, if not all, of the money which she had for her support, and at said place in the city of Memphis was habitually guilty of adultery with the said Lea; and that such conduct was engaged in by complainant for some time prior to the 20th day of November, and has been from that time to the time of the filing of this answer.

"That complainant had been guilty of many other offenses similar to those hereinabove referred to, and that the cause of the complaints made by this respondent were the doing of the things just above mentioned."

The respondent made her answer a cross-bill, asking for alimony, but not demanding a divorce for herself. The chancery court adjudged that complainant had not

made out his case, and also adjudged that the allegation of the cross-bill was true, denying the divorce, and awarding alimony to respondent in the sum of fifty dollars per month, and in addition decreed that the residence of the complainant should be set apart for the defendant as a residence, from which decree complainant appeals here.

The complainant and defendant both testified, and their witnesses testified to facts which fully sustained the allegation of the complainant as to the abusive language and as to the assault made upon complainant by the defendant. The chancellor admitted evidence on the charge of adultery of many mere rumors, not made in the presence of the complainant, and admitted statements by the woman, Lelia Lea, not in his presence, to third parties, and admitted conversations between T. O. Banks and other parties, not in the presence of the complainant, and admitted complaints made by T. O. Banks to the police authorities in the city of Memphis, and certain proceedings in the juvenile court of Memphis, about the police authorities taking the child or children of Lelia Lea from her custody. On cross-examination of complainant he was asked as to his relations with numerous women, all of which he denied under oath. The chancellor then admitted certain evidence of rumors and talk as to Bank's relations with parties not named in the bill. There was evidence for the defendant that Banks spent some of his time at the place in Memphis, Tenn., alleged in the bill, but no evidence of any direct character that would sustain the charge of the cross-bill. The most damaging testimony in this respect was that a colored woman connected with the police department of Memphis went to the Lea woman's house for the child, and reached the house between 5 and 6 o'clock in the morning, and that the Lea woman came to the door dressed in a kimono, with nothing except the kimono and underclothes on, and that Banks was in the room reading a

paper, but partially dressed. The witness, though asked to say how he was dressed, failed to do so, saying he was not in a condition, in her judgment, to go on the street. There was another witness, who testified that Banks and the Lea woman were seen on the back steps of the Lea woman's house early in the morning, after daylight, and on the outside of the house, but partially dressed. A letter was introduced in evidence from the Lea woman to Banks, containing some terms of endearment and tending to indicate that they were in love with each other. This letter was admitted, and seems to have been written after the assault in 1914.

It will be noted, from the pleadings in the cross-bill charging the offense against Banks, that no specific time or times is set forth in which any act was charged, but was in general terms charging from November 20, 1916, to the filing of the amended cross-bill, which was filed on June 8, 1917. The rule is well established that, to defend a divorce on the ground of recrimination, the offense charged against complainant must be established by the same character of proof that it would take to grant a divorce, were the defendant the complaining party, and no offense charged against the said complaining party. There was no direct act in the proof, proven by any witness introduced, claiming to have any knowledge of any direct act of adultery. The case is one entirely of circumstantial evidence.

Where an offense of this kind is sought to be proven by circumstantial evidence, the circumstances must be proven with reasonable certainty, and the circumstances so proven must be such that the conclusion sought to be established follows logically from the facts. If there are two or more reasonable theories which may be drawn from the facts proven, the proof will be insufficient because, to invest mere circumstances with the force of truth, the conclusion must not only be logical, and tend

to prove the facts charged, but must be inconsistent with a reasonable theory of innocence.

After a careful consideration of the proof in the record, we think the proof insufficient to establish the adultery charged. "Trifles light as air" may be sufficient to convince the jealous or the suspicious, but they do not impress the court with the same degree of credulity. Before accepting charges so seriously affecting the character of a person, the evidence must be clear and convincing. It appears in the evidence that Banks was a leader of the colored race engaged in many enterprises tending to the uplift of the race, and that he enjoyed a national reputation among the members of his race. The proof in cases of this kind should be restricted largely to the pleadings, and parties not be required to run the gauntlet of all rumors of a community pertaining to his life and character, at least without notice and preparation to meet such charges and evidence.

The courts do not take hearsay or "they say" evidence. Acts may be established by circumstances, but the circumstances must be those within the personal knowledge of the witness. This court allows some latitude to a chancellor in admitting evidence on the theory that he can discriminate between competent and incompetent evidence; but, where the chancellor admits incompetent evidence, it should be excluded before the judgment, and if he admits evidence, and does not exclude it, it would be fair to assume that the evidence had some effect in influencing his judgment.

We think the court also erred in awarding the residence, a ten room house, costing thirteen thousand dollars to fourteen thousand dollars, to the respondent; the complainant and respondent having no children. The complainant is required to furnish the necessary support, but we see no necessity for one person occupying and having exclusive control of a ten room residence, and, as the home has been broken up through the

fault of the respondent, the most that complainant is required to furnish her is a reasonable support.

For the reasons indicated, the judgment is reversed, and the cause remanded.

*Reversed and remanded.*