McCRANEY *v.* McCRANEY.

In Banc. Jan. 23, 1950.

No. 37360 (43 So. (2d) 872)

Edward J. Bogen, and Price & McIlwain, for appellant, cited the following authorities:—

**Wynn, Hafter, Lake & Tindall**, for appellee, cited the following authorities:—

**McGehee, C. J.**

This is a suit for divorce and alimony brought by the appellee Lee Ethel McCraney against her husband, the appellant Percy McCraney, charging (1) that shortly after their marriage he became violently abusive and on numerous occasions cursed and abused her, and that she was threatened by him with physical violence and placed in fear of losing her life; and (2) that the husband had been guilty of repeated acts of adultery with a woman by the name of Willie May Collins, who resided immediately to the rear of the McCraney home.

The decree appealed from recites that the allegations in the complaint "are true and are sustained by the evidence", and awards a divorce to the wife as complainant.

The decree then provides "That the complainant, Lee Ethel McCraney, shall have by way of alimony the fee simple title to the property described in the original bill (which had been occupied by the parties as a home) . . . and that this decree shall operate as a conveyance to her of a fee simple title to the said property".

Without regard to whether or not the proof was sufficient to sustain either of the grounds for divorce stated, we know of no authority for a court to divest the husband of the title to his property and to vest the title in the wife by judicial fiat or decree. In a proper case the court could have awarded alimony payable in a lump

sum or in monthly installments, dependent upon the circumstances of the parties, and could have fixed a lien for the payment thereof against the property of the husband with the right on his part to discharge such lien and retain his property, or the court could have ordered the property sold under execution after default in the payment of the alimony under a decree fixing the same in some definite amount in a lump sum or in monthly installments.

 The charge that the husband on numerous occasions cursed and abused the wife and threatened her with physical violence and death is wholly unsupported by proof sufficient to show that he was habitually guilty of any such alleged conduct.

The testimony of the wife is that throughout one week of their married life her husband had made threats against her and told her that she had "better be praying"; that during said week they heard a knock at the door one night and that the husband loaded his gun and followed the wife to the door, and that when she opened the door it developed that the caller was not the person whom the husband thought was doing the knocking, and that when the wife opened the door she said, "That's Jerome, that's not Phillip. When I opened the door Jerome was standing up there and Percy, with the gun behind me—forced me to the door—". It is undisputed that when Percy saw who the caller was he immediately returned the gun to its proper place in the house. The caller, Jerome, testified as a witness for the wife, but said that Percy did not have the gun drawn, nor did he otherwise corroborate the wife in her theory that she had reason to fear for her life on that occasion.

On the other hand, the husband testified that he had been taking a bath, was not dressed, and that his wife got the gun for him while he was getting the shells and that he merely asked her to go to the door.

The wife testified that on another occasion during their married life her husband choked her. But she was not corroborated by any other witness as to any habitually cruel and inhuman treatment, and a witness for the husband testified that the wife admitted to him in the presence of her husband that he had never fought her, and that the wife said to her husband on that occasion: "If you wants me to come home you deed me that home and bring me the deeds over and put them in my hands". The husband also testified that after she had left home the first time, and while he was trying to get her to come back home, she said: "You go and get a deed and make it out in my name and give it to me, and I will have the house and I will come home". She was not then complaining of any alleged cruel and inhuman treatment and did not appear to have been apprehensive of any danger to her life in the event that he had seen fit to make her a deed to the home upon her agreeing to return.

As to the second alleged ground for divorce which was alleged for the first time in an amendment filed on October 25, 1948, after the filing of her original bill on March 20, 1948, there was no testimony on the part of any witness that the husband had ever been seen at any time in the presence of Willie May Collins under suspicious circumstances, indicating his guilt of adultery with her. The wife relies solely upon the fact that he frequently went to the home of Willie May Collins, situated immediately to the rear of the McCraney home as aforesaid, and that on at least two occasions during their married life he had stayed at the Collins home until a late hour of the night, and that the defendant had made certain statements to her in the nature of admissions or confessions that he had been "going with" the Collins woman and that he promised not to go to her home any more or have any dealings with her, if the complainant would return home.

We deem it unnecessary to review at length and enumerate the various expressions that the defendant is alleged to have used in connection with his visits to the Collins home, since we deem it sufficient to say that when all of such statements are considered they are insufficient to make out a case that would approximate the weight and sufficiency of the proof made against the husband in the case of Banks v. Banks, 118 Miss. 783, 79 So. 841, which was held to be insufficient to establish the charge of adultery. In that case it was held that the proof of such a charge must be clear and convincing. The proof in that case was much more positive and direct, and the incidents testified to were much stronger as indicating the truth of the charge, than is the testimony in the case at bar.

Moreover, as against the indefinite statements or alleged concessions of the husband which are claimed to indicate his guilt of the charge complained of, it was shown without dispute in the instant case that Willie May Collins lived in the home with eight of her children, two of whom slept in the bed with her, and that the defendant was the godfather of two of the children, and that he frequently went there to assist two of her grown sons in keeping an engine and boiler in repair which was used in connection with a pressing shop operated by them on the premises. Then, too, the estranged husband of the Collins woman visited the home and his children almost daily and testified that he had never had any reason to think that anything wrong was going on between the defendant and his own estranged wife. Naturally the Collins woman and other members of her family testified to the same effect, but no witness was produced to even testify that the defendant and the Collins woman had ever been seen together alone either at this home or elsewhere.

In view of the fact that the complainant resided in sight and in close proximity to the Collins home, it would

seem that she could have obtained personal knowledge or more information to sustain her complaint than she produced at this trial, even though she did produce a letter from her husband which she received while she was in California, saying that "just as soon as you come home I will build you any kind of house you want and it will be wrote up in your name, and you can be happy, and you won't have to be close to those Collins at all. That shows you I want you and no one else."

The foregoing letter refers to the Collins in the plural, and while it recognizes the complaint of the wife in regard to them, it also assures her of the singleness of his devotion, on its face.

 This alleged ground for divorce is one involving moral turpitude, constitutes a bar to the recovery of alimony when the wife is the offending spouse, and the rule is, therefore, a wholesome one which requires that the proof of such a charge shall be clear and convincing. In the instant case the neighbors testified for the complainant about the defendant going to the Collins home, but none of them gave any testimony even tending to show that the defendant was ever seen with the Collins woman out of the presence of the members of her family.

We are, therefore, of the opinion that the facts in this case fail to sustain either of the grounds relied upon for a divorce and that the decision of the trial court to the contrary was manifestly erroneous. The decree appealed from will, therefore, be reversed in its entirety, the divorce denied, and the bill of complaint dismissed, but without prejudice to any right that the wife may have, if any, to sue for separate support and maintenance.

Reversed and decree here for the appellant.