# Nix *v.* Nix

No. 43575          June 14, 1965          176 So. 2d 297

*Melvin, Melvin & Melvin,* Laurel, for appellant.

*Paul G. Swartzfager, Raymond Swartzfager, Jr.,* Laurel, for appellee.

LEE, C. J.

Mrs. Frances B. Nix, on January 21, 1964, filed her bill against Billy H. Nix, in which she charged that the parties were married on September 17, 1954, and were separated on January 1, 1964; that Mark Allen Nix, age 8, and Sherry Lynn Nix, age 5, were the offspring of the marriage. She charged the defendant with habitual cruel and inhuman treatment and sought a divorce on that account. She also sought the award of the custody of the children to her, together with support for them, and alimony.

The defendant, on April 14, 1964, filed his answer, denying the material allegations of the bill, but admitting his liability for the payment of certain obligations referred to in the bill of complaint.

The chancellor, by decree of date of May 8, 1964, awarded temporary custody of the children to the mother and maintenance in the sum of $31.25 weekly to be paid into the registry of the court for disbursement.

Subsequently, on June 30, 1964, the defendant filed a cross bill in which he alleged that the complainant habitually drank alcoholic beverages to excess and had been guilty of adultery on a number of occasions, about which he was never aware and which he had not condoned. For these reasons, he prayed for a divorce. The answer to the cross bill was a detailed denial of the allegations thereof.

The final decree adjudged that the allegations of the cross bill, showing complainant's guilt of adultery, which was not condoned, were true, and awarded the temporary custody of the children to the father with an agreement thereon and instructions that they be placed in the home of Mrs. Myrtle Nix until further order of the court, and provided that the mother should be given visitation rights.

The decree also refused to allow the complainant any sum for the payment of an attorney's fee.

On her appeal here, the appellant, Mrs. Nix, assigns four alleged errors, but they in effect mean that the court was manifestly wrong in all of its findings and in the application of the law.

Without detailing the evidence for the complainant, it is sufficient to say that it was to the effect that the defendant, at a New Year's Eve party on the evening of December 31, 1963, while under the influence of intoxicating liquor, had brutally assaulted and inflicted bodily injuries upon her. She was corroborated in this instance by two or more witnesses. Similar treatment from him had been suffered by her on other occasions over several years and had endangered her health and life. She also had some corroboration as to these instances and effects. In addition, she testified that the defendant, three or four weeks prior to the hearing of this case, had again inflicted bodily injuries upon her for which he was convicted in the city court. The evidence, adduced in her behalf, if believed, would have warranted the court in granting her a divorce.

On the contrary, the defendant's version was to the effect that his wife was intoxicated and the trouble maker at the party; and that he was trying to protect her. While denying that he struck her, his insistence was that contact, if any, was accidental. He denied the latter charge, saying that he was trying to get out of her car because his wife was beating him in the face with her fists. While admitting his conviction, he said that he could not help what the court did.

■■ ■ On the allegations of the cross bill, the version of Nix was that he knew nothing about any adulterous conduct on his wife's part at the time he answered; that he was away from home on his work much of the time; and that his curiosity had been aroused when, several nights after he had gone to his wife's house, seeking a

reconciliation, he went back there and found part of a letter which was evidently written to a paramour. Following this lead, he began his investigations and found and produced several witnesses who testified about the drinking habits of the complainant; others about keeping the children while she had dates with another man; calls over the telephone by a man to the complainant's home and their subsequent leaving in his car and being gone from a few minutes to several hours; and finally the evidence of a witness who claimed to have been a boon friend of the complainant, to the effect that the complainant admitted to the witness that she was in love with two different men for a substantial length of time and with whom she had had sexual intercourse. This evidence, if believed by the chancellor — and evidently it was — warranted the granting of the prayer of the cross bill.

The Court reached its conclusion because it is mindful of the rule set out in Bunkley and Morse's Amis Divorce and Separation in Mississippi section 3.09(5) (1957), as follows:

In every suit for divorce on the ground of adultery, the ultimate fact to be proved is that the defendant actually had sexual relations with a person other than the complainant. But while the testimony must be clear and convincing, *it is not necessary,* as in criminal cases, *to prove it beyond a reasonable doubt.* Neither is it necessary to prove *the fact of adultery* by direct testimony, because, since the act is *usually committed in secret,* such *proof would often be impossible.* The courts therefore must take such evidence as the nature of the case permits — circumstantial, direct, or positive, and *bring to bear upon it the experiences and observations of life,* and thus weighing it with care and prudence, give effect to its just preponderance. But such evidence must be so clear and strong as to carry a conviction of the truth of the

charge; and if the proof be circumstantial, it *is not sufficient that it shall merely raise a fair inference of guilt,* but must lead to it as a necessary conclusion, in the light of common knowledge and experience. For the circumstantial evidence to be sufficient, it must be directed to a clear and convincing showing of both the adulterous inclination and the reasonable opportunity to satisfy the inclination or disposition. The authors have compiled and cited a large number of cases in support of the stated rule.

■■ ■ As to the custody of the children, it should be said that there has long been recognition in this jurisdiction that the custody of children of tender ages should be awarded to the mother. ■■■ However, the evidence in this record shows that the appellant worked as an operator for the telephone company and was subject to irregular hours. Consequently, it was necessary for her to engage suitable persons to care for the children during her work periods. The evidence indicated that she had been able to do this in most instances very well. But it also appeared that the little girl, Sherry Lynn, was susceptible to asthma, and that hospitalization had been required for her a number of times. It was shown that Mrs. Myrtle Nix, a sister-in-law of the appellee, who will actually have the care of the children under the temporary custody provision to the father, is a registered nurse, with two children, one being a little girl the same age as Sherry Lynn, and that she is well trained and has agreed with the court to apply and use her technical training in case of the recurrence of asthmatic attacks or other indispositions.

In the case of Winfield v. Winfield, 203 Miss. 391, 35 So. 2d 443 (1948), wherein the question of the custody of children as between the mother and father, when the mother had been found guilty of adultery, was involved, and the opinion at 395 said:

If the decree in this case awarding the custody of the youngest child to the mother might have been justified because of its age, that reason has ceased to exist the child now having arrived at the age of six years.

The children, in this instance, are both more than six years of age at this time.

Under all of the circumstances, having regard to the benefit that the trial court receives from observing the demeanor of the witnesses, it can not be said that the chancellor was manifestly wrong. This was an order, temporary in nature, and can not be disturbed by this Court.

The appellant insists that the trial court was in error in its refusal to allow her, in the court below, a fee for the payment of her attorney's fee there incurred.

██ █ The modern rule affords a more liberal policy with reference to attorneys' fees. The wife, without property or funds, should not be denied a remedy merely because of a lack of funds, when her attempt is in good faith. ██ █ A full consideration of this entire record gives reasonable grounds for the allowance to her of a fee for an attorney without awaiting the final result of such a hotly contested issue. The evidence showed that the appellant was working herself and spending all that she brought home in pay for the benefit of the family. Besides, the appellee was shown to have been financially able to pay a reasonable fee. Under the circumstances, the court should have allowed her an attorney's fee as a result of services performed in the trial.

Consequently the cause will be affirmed as to the divorce, and the award of temporary custody, but will be remanded to the court for the allowance of a reasonable fee to the appellant for her counsel in the trial court, and also, in addition, one-half of the amount so allowed, also, for such a fee on this appeal. Keyes v. Keyes, 252 Miss. 138, 171 So. 2d 489.

Let the cause be affirmed, as pointed out, and remanded for the specific purpose stated. Also, let the appellee pay all costs.

Affirmed generally, but remanded under instructions.

*Rodgers, Jones, Patterson and Smith, JJ.,* concur.