[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 286 
This is an appeal from the Chancery Court of Hinds County wherein Thomas C. Gerity, appellee, sought modification of a previous divorce decree based upon a material change in circumstances occurring subsequent to the rendition of the divorce decree. Gerity, in his petition, averred that Stephanie Owen, his former wife, appellant, had engaged in sexual misconduct and thereby forfeited her right to all future alimony under the previous divorce decree. Ms. Owen denied the material averments of the petition and subsequently filed a petition for contempt, alleging that Gerity had failed to pay a promissory note which he was obligated to pay under the provisions of the final decree for divorce. The cases were consolidated and at the conclusion of the testimony, the chancellor terminated Ms. Owen's alimony based on a finding that she had engaged in fornication with Haywood Ellis, Jr. The chancellor also found that Gerity was not in contempt of court for failing to pay the promissory note. From this finding, Ms. Owen appeals. We reverse.
The parties were married on August 21, 1971. On February 11, 1980, they separated and subsequently filed a joint bill for divorce on March 4, 1980, upon the grounds of irreconcilable differences. No children were born to the parties during the marriage. On May 7, 1980, a final decree of divorce was granted to the parties. The decree incorporated the parties' property settlement agreement which provided, among other things, that appellee would pay appellant $325 per month in alimony beginning twenty-four months from the date of the agreement[1] for housing, and continuing thereafter for sixty months so long as appellant remained the exclusive occupant of her residence.
On June 16, 1981, appellee filed the present petition for modification of the final decree for divorce, alleging that appellant had forfeited her right to receive future alimony because she was involved in a sexual relationship with Haywood F. Ellis, Jr.
On June 19, 1981, appellant filed a petition for contempt, contending appellee had failed to abide by the parties' property settlement agreement incorporated in the final decree of divorce in that he had failed to discharge a promissory note owing to appellant's mother. The two cases were consolidated for trial.
Appellee's proof as to the alleged sexual relationship between appellant and Ellis was wholly circumstantial. The proof established that appellee and Ellis were fond of each other, enjoyed each other's company and saw each other on an average of three to four times a week. Both appellant and Ellis admitted they had chaperoned dances together, exchanged gifts, attended movies together, dined together, attended various functions together and had even been alone in appellant's house together on occasion. Appellant and Ellis denied they had ever *Page 287 
engaged in sexual relations even though they had had ample opportunity to do so if they so desired.
Although appellee sought by photographs to establish that Ellis was seen leaving appellant's home early in the morning on June 12, 1981, the evidence overwhelmingly established that Ellis was staying at appellant's residence while she was visiting her mother in Nashville, Tennessee. Both appellant and Ellis denied they had ever slept overnight in the same house except when they stayed with appellant's mother in Nashville for a visit.
Based upon the proof, the chancellor ordered that appellant's alimony be terminated.
 I. Did the chancellor err in terminating appellant's alimony based upon her alleged adulterous relationship?
The subsequent misconduct of a wife following an absolute divorce from her husband may, in proper circumstances, constitute a material change in circumstances so as to entitle the husband to modification of the final decree for divorce. McHann v.McHann, 383 So.2d 823 (Miss. 1980); McRae v. McRae,381 So.2d 1052 (Miss. 1980); and Rubisoff v. Rubisoff, 242 Miss. 225,133 So.2d 534 (1961). The misconduct most often complained of involves alleged sexual misconduct of a wife whereby the husband seeks a termination of future alimony provided for by the final decree of divorce.
Although in previous decisions this Court has referred to this type of sexual misconduct as adultery, adultery cannot be committed by an unmarried woman with an unmarried man, the gist of the offense being voluntary sexual intercourse of a married
person with a person other than the offender's spouse. Because the bonds of matrimony in cases such as this one have been severed, the offending spouse's sexual misconduct cannot be categorized as anything more than fornication. In such a case, the chancellor, as the trier of fact, has the duty to find whether or not the alleged misconduct of the former wife is of such a nature as to forfeit her right to future alimony. This question must be faced and determined on a case-by-case basis.McHann, supra, and McRae, supra.
An adulterous relationship may be established by circumstantial evidence, the act itself usually being committed in secret, thereby rendering direct proof thereof impossible. Hand, Mississippi Divorce, Alimony and Child Custody § 4-7 (1981), and Bunkley Morse's Amis, Divorce and Separation in Mississippi § 3.09(5) (1957). Where the proof is circumstantial, the party asserting the adulterous relationship carries a heavy burden. InBanks v. Banks, 118 Miss. 783, 79 So. 841 (1918), this Court stated:
 Where an offense of this kind is sought to be proven by circumstantial evidence, the circumstances must be proven with reasonable certainty, and the circumstances so proven must be such that the conclusion sought to be established follows logically from the facts. If there are two or more reasonable theories which may be drawn from the facts proven, the proof will be insufficient because, to invest mere circumstances with the force of truth, the conclusion must not only be logical, and tend to prove the facts charged, but must be inconsistent with a reasonable theory of innocence.
 (118 Miss. at 787-88, 79 So. at 842).
See also Hulett v. Hulett, 152 Miss. 476, 119 So. 581 (1928). The proof of such a charge must be clear and convincing. Nix v.Nix, 253 Miss. 565, 176 So.2d 297 (1965); and McCraney v.McCraney, 208 Miss. 105, 43 So.2d 872 (1950).
Adultery is a violation of the exclusivity of the marital relationship. Hand, supra. A divorce upon a charge of adultery may be granted upon a showing of either an infatuation for a particular person of the opposite sex or a generally adulterous nature on the part of the defendant. Either of these elements must be supported by proof of a reasonable opportunity to satisfy. Hand, supra, and Bunkley Morse's Amis, supra, § 309(6). These elements must be shown to obtain a divorce upon the ground of adultery. *Page 288 
McHann, supra, and McRae, supra, both are distinguishable from the present case. In both cases the divorced wives admitted sexual relationships and cohabitation with men following their divorce decrees. This was not established in the present case. Here the proof at most showed that appellant dated Ellis frequently and the two would occasionally visit alone together in her home. Both denied any sexual relationship and furthermore denied ever sleeping in the same house except when they visited appellant's mother in Nashville.
Appellee relied upon the presumption that appellant had engaged in fornication with Haywood Ellis. Although the proof showed both a mutual infatuation and an opportunity to gratify, there was no presumption created thereby because appellant was not a married woman. There being no presumption created by the circumstances, the evidence was insufficient to establish a material change of circumstances due to appellant's alleged sexual misconduct. The chancellor was therefore manifestly wrong in terminating appellant's alimony for this reason.
 II. Did the chancellor err in finding appellee was not in contempt for failing to pay the promissory note held by appellant's mother pursuant to the parties' separation agreement?
Appellant contends, under paragraph 7 of the agreement, appellee was obligated to pay a $1000 promissory note executed by the parties in favor of appellant's father, who is now deceased. According to appellant, her father loaned the parties $2000 to use as a down payment on their first house. Sometime after the money was advanced, a note was submitted to the parties, whereupon they executed the same. When appellant's father died (June 8, 1978), the note was not listed in the inventory of the estate. No demand was made on appellee for repayment. The note was assigned on July 17, 1980, from Deliann Tolliver Owen, executrix of the estate of William Owen, deceased, to Deliann Tolliver Owen, sole beneficiary under the will of William Owen. Mrs. Owen is appellant's mother. At the time of trial, only $1000 was alleged to be owing on the note.
The question before this Court is whether the term "bills" as used in the parties' separation agreement encompasses the promissory note executed by the parties. Appellant contends the note is encompassed by the term. According to her, it was the intent of the parties that she leave the marriage without any debt owing on her part. Appellee contends the note was not discussed during the parties' negotiations and it was his understanding that he was responsible for only household bills incurred by the parties before February 1980.
The property settlement agreement, being prepared by appellant's attorney, must be construed more strongly against her. Moreover, any ambiguity or vagueness appearing therein must be construed more strongly against appellant. Stampley v.Gilbert, 332 So.2d 61 (Miss. 1976). Words of a contract are to be given their ordinary meaning. Continental Casualty Co. v.Hester, 360 So.2d 695 (Miss. 1978).
Under paragraph 4, appellee agreed to discharge the monthly installment note on the house. Under paragraph 6, appellant agreed to be responsible for the indebtedness on one of the automobiles, while the appellee agreed to be responsible for the indebtedness on the second automobile and an airplane.
From the agreement, it is evident that the parties treated their indebtednesses apart from the bills mentioned in paragraph 8. Had the parties agreed that appellee would be responsible for the promissory note in question, it would have been very simple to provide so in the agreement. However, since the parties did not do so and because their indebtedness were separated from the bills provided for in paragraph 8, we cannot say the chancellor was manifestly wrong in his finding.
 III. Did the chancellor err in awarding appellant attorney's fees?
A chancellor has broad authority and discretion in setting appropriate attorney's *Page 289 
fees and unless he is manifestly wrong, this Court will not disturb his award of attorney's fees. Walters v. Walters,383 So.2d 827 (Miss. 1980). However, the allowance of an attorney's fee has been held erroneous where the wife has ample means to engage the services of an attorney. Bernard v. Bernard,
43 So.2d 727 (Miss. 1949).
Appellant, in the present case, earned approximately $12,000 per year, was purchasing her own home, and owned jewelry and silver with a substantial value (approximately $18,000-$22,000). She also owned a $2000 certificate of deposit and a savings account with a $300 balance. Although appellant certainly had adequate means with which to employ and pay an attorney, this case is controlled by Gresham v. Gresham, 199 Miss. 778,25 So.2d 760 (1946), wherein we stated:
 This brings us to the question of attorney's fees. The learned chancellor denied application of appellant for any amount for her solicitors. Appellee cites Miller v. Miller, 173 Miss. 44, 159 So. 112; Parker v. Parker, 71 Miss. 164, 14 So. 459; Rees v. Rees, 188 Miss. 256, 193 So. 334, 194 So. 750. But they have no application here, except that appellant is entitled to representation by a competent solicitor, and solicitor's fees accordingly. Her alimony allowance and rentals cannot be termed large enough for her to pay her counsel out of it. (The house in Brookhaven is mortgaged.) The appellant brought her into court on this matter resulting from their former marital status, seeking, without justification, an alteration of his liability to her from a court decree fixing it, and we think should pay her an attorney's fee. Otherwise, he could sue her so often as to impose an oppressive burden on her allowance in resisting his repeated applications. We think allowance of an attorney's fee should have been made her by the court below.
 (199 Miss. at 784-85, 25 So.2d at 762).
Because it was the appellee's action that required appellant's hiring an attorney, we believe an attorney's fee was proper in the instant case.
Based on the foregoing, this cause is reversed and rendered as to appellant's alimony and affirmed as to all other parts.
REVERSED IN PART, AFFIRMED IN PART, AND RENDERED.
PATTERSON, C.J., SUGG and WALKER, P.JJ., and BROOM, ROY NOBLE LEE, BOWLING, HAWKINS and PRATHER, JJ., concur.
[1] For the first 24 months following the divorce, appellee agreed to pay the house note, insurance and taxes on the parties' residence. The house was then sold pursuant to the parties' settlement agreement which provided for the sale of the house upon appellant's remarriage, appellant's failure to occupy the domicile as her principal residence or the expiration of 24 months.