IN THE SUPREME COURT OF MISSISSIPPI
NO. 93-CA-01026-SCT

*WILLIAM C. ASHFORD*

*v.*

*SANDRA W. ASHFORD*

**THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-A**

| | |
|---|---|
| DATE OF JUDGMENT: | 8-9-93 |
| TRIAL JUDGE: | HON. PAT WISE |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | T. JACKSON LYONS |
| | JANE SANDERS LEWIS |
| ATTORNEYS FOR APPELLEE: | L. C. JAMES |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | DIRECT APPEAL: AFFIRMED; CROSS APPEAL: REVERSED AND REMANDED - 2/27/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

EN BANC.

PRATHER, PRESIDING JUSTICE, FOR THE COURT:

## I. INTRODUCTION

This domestic relations case arises from a modification hearing in which the chancellor denied the husband's request to reduce or terminate alimony and to be named custodial parent of the couple's oldest child. The chancellor also ordered the husband to pay $15,000 of the wife's attorney fees and denied the husband supersedeas. At the wife's request on cross-motion for modification, the child support payments were increased by $300 per month.

On appeal, the husband argues that the chancellor erred with regard to alimony, custody, payment of the wife's attorney fees, and the denial of supersedeas. On cross-appeal, the wife argues that the chancellor should have increased the amount of child support to comply with the statutory guidelines. The wife also asserts that the husband should pay her attorney fees for this appeal.

This Court finds that the issues raised by the husband on appeal are moot or without merit. On cross-appeal, the case is reversed and remanded for a written, on-the-record determination of the applicability of the statutory child support guidelines. The wife's argument that the husband should pay her attorney fees on appeal is without merit.

## II. STATEMENT OF THE CASE

Sandra and William Ashford were married December 28, 1971. They had two children: Emily Claire Ashford (born May 25, 1974) and John Clay Ashford (born June 17, 1977). They separated October 24, 1984, and, on February 24, 1986, William Ashford was granted a divorce from Sandra Ashford on the ground of habitual cruel and inhuman treatment.

Custody of the two children was awarded to their mother (Sandra), subject to reasonable visitation rights of the father (William). William was ordered to pay the following:

1. $1,500 per month in child support;

2. the children's school tuition;

3. the reasonable and necessary costs of a college education for each child, provided that there would be an appropriate reduction in the amount of monthly child support;

4. the children's medical insurance and the cost of all reasonable medical treatment over the first $25.00 not covered by insurance;

5. $2,200 per month in permanent alimony until Sandra died or remarried;

6. a partial division of property in the amount of $120,000 at a rate of $10,000 per year;

7. one-half of any and all tax refunds due to the parties;

8. life insurance premiums on himself in the amount of a) $250,000 with the children as beneficiaries until the children became emancipated, b) $250,000 with Sandra as beneficiary, to be reduced to $125,000 when the children no longer lived with her, provided she was still unmarried, c) the unpaid lump sum alimony with Sandra as the beneficiary, should Sandra remarry (C. P. at 4-5);

9. one-half the mortgage, tax, and insurance on the marital dwelling. (Sandra was granted use and control of the home until she remarried or both children left home -- whichever came first.);

10. any major repair to the marital dwelling in excess of $200 for which William was to be reimbursed from the proceeds of any subsequent sale of the property; and

11. $20,000 for Sandra's reasonable attorney fees.

Six years later, on May 20, 1992, William filed for modification of the divorce decree. William requested custody of Emily (then age 18) and John Clay (then age 14) and a corresponding reduction in the amount of child support. He also requested a reduction or termination in alimony.

On July 28, 1992, Sandra filed her "Answer and Counterclaim" to William's motion. Sandra denied

that William was entitled to any of the relief he asked for in his motion for modification. On cross-motion, Sandra sought an increase in alimony and child support. In addition, Sandra asked that William be required to pay her attorney fees in connection with the motion and cross-motion.

The chancellor ruled that, pursuant to stipulation of the parties, John Clay would remain in Sandra's custody. However, William's visitation rights were increased. Sandra and William were granted joint legal custody of Emily, with primary physical custody to remain with Sandra. William's motion for modification with regard to alimony was dismissed with prejudice. The chancellor ruled that William failed to establish a material change in circumstances to justify any termination or reduction in alimony.

Furthermore, the chancellor increased William's child support payments from $1,500 per month to $1,800 per month (or $900 per child). With regard to the method of payment, the chancellor held that William should pay a) $900 per month for John Clay's child support directly to Sandra, b) $150 per month of Emily's child support directly to Sandra, and c) $750 per month of Emily's child support into a joint account for Sandra and Emily. The chancellor instructed William to pay for the college education of his children, but allowed William to do so from money set aside for the children by their paternal grandmother. The chancellor ruled that all other provisions of the divorce decree would continue in full force and effect. William was ordered to pay $15,000 toward Sandra's attorney fees.

William appeals to this Court and raises the following issues:

**A. Whether the trial court erred by failing to terminate or alternatively reduce alimony payments to Sandra Ashford?**

**B. Whether the trial court erred in denying the request of Emily Ashford, age 18, to have her father as custodial parent?**

**C. Whether the trial court erred in ordering Dr. William Ashford to pay $15,000 of Sandra Ashford's attorney fees?**

**D. Whether the trial court erred as a matter of law in denying a motion for supersedeas where the judgment appealed from was a money judgment for sums certain?**

Sandra raises the following issues on cross-appeal:

**A. Whether the trial court should have increased child support further because there was a material change in Dr. William Ashford's income?**

**B. Whether attorney fees for purposes of this appeal should be awarded to Sandra Ashford?**

### III. LEGAL ANALYSIS OF ISSUES ON APPEAL

**A. Whether the trial court erred by failing to terminate or alternatively reduce alimony payments to Sandra Ashford?**

William argues that he was entitled to the reduction or termination of alimony based on Sandra's sexual misconduct and a change in her financial circumstances.

## 1. The Alleged Sexual Misconduct.

The record reflected that Sandra had a relationship with John Vlahos (Vlahos). The chancellor, in her bench ruling stated: "The Court listened to the testimony and weighed [Vlahos'] credibility and found at this instance that the movant [William] failed to meet his burden of proof in convincing this Court that there was any in this Court's opinion morality issue."

The formal written judgment stated that William had failed to prove a change in circumstances that would justify any termination or reduction in alimony. William again contends before this Court that Sandra's relationship with Vlahos was not wholesome and that she should receive less alimony or no alimony as a result of her sexual conduct. Sandra contends that she had not engaged in sexual misconduct or cohabitation sufficient to warrant a reduction or termination of alimony. She also argues that, under this Court's standard of review, the chancellor's ruling as to the absence of sexual misconduct in this case should be given great weight.

> The standard of review in determining the weight of the evidence has been well established by this Court and it will not "disturb the findings of a chancellor unless the chancellor was manifestly wrong, clearly erroneous or an erroneous legal standard was applied."

*Ellis v. Ellis*, 651 So. 2d 1068, 1071 (Miss. 1995) (quoting *Crow v. Crow*, 622 So. 2d 1226 (Miss. 1993)).

For years, the courts of this State viewed sexual conduct and its application to alimony as a moral issue; as a result, former wives (by engaging in sexual conduct) have forfeited their right to support from their former husbands. *See generally McRae v. McRae*, 381 So. 2d 1052 (Miss. 1980); *McHann v. McHann*, 383 So. 2d 823, 826 (Miss. 1980); *Owen v. Gerity*, 422 So. 2d 284, 287 (Miss. 1982). However, this Court, in conformity with the modern trend, has recently held that sexual conduct as it relates to alimony is an economic issue -- not a moral issue. *See generally Ellis*, 651 So. 2d at 1072; *Hammonds v. Hammonds*, 641 So. 2d 1211, 1216 (Miss. 1994).

Indeed, alimony is a purely economic issue. "The general rule is that the wife is entitled to a reasonable allowance of alimony commensurate with her accustomed standard of living and the ability of the husband to pay." *Hockaday v. Hockaday*, 644 So. 2d 446, 448 (Miss. 1994).

The test for modification of spousal support is "whether there has been a material or substantial change in circumstances since the divorce." *Ellis*, 651 So. 2d at 1072. In cases of sexual activity by the recipient of spousal support with a third party, this Court has held that there are two factors to consider in determining whether a change in circumstances merits a reduction in alimony: "(1) whether the third party provides support to the recipient . . .; and (2) whether the recipient spouse contributes to the support of a third party." *Ellis* 651 So. 2d at 1072; *Hammonds*, 641 So. 2d at 1216).

The record in the case *sub judice* reflects that Sandra and Vlahos had exchanged gifts of clothing, jewelry, a camera, furniture, etc. In addition, they had shared expenses on one trip to Florida where Sandra stayed in a room with Emily and Vlahos stayed in a room with his children. Both Sandra and Vlahos denied that they ever stayed overnight with one another, and there is nothing in the record to contradict this testimony.

Furthermore, it is undisputed that Sandra had never given or loaned Vlahos money. Sandra and Vlahos did not own any property, incur any debt, or file their income tax together. They had always maintained separate homes. They had never pooled their income and resources.

Therefore, there is no evidence that Sandra (upon receiving support from William) used her resources to support Vlahos. In addition, there is no evidence that Sandra was supported by Vlahos, thereby reducing or eliminating William's obligation to provide support. Thus, considering these two factors in the light of the deferential standard of review applicable in this case, this Court finds that the chancellor properly denied William's request for reduction or termination of alimony due to Sandra and Vlahos' relationship. *See Ellis*, 672 So. 2d at 1072; *Hammonds*, 641 So. 2d at 1216.

### 2. The Alleged Change in Financial Circumstances.

William, who is an ophthalmologist earning almost one million dollars per year, admits that he is able to pay alimony. However, he contends that, due to Sandra's financial success, alimony is no longer justified in this case.

As stated earlier, the standard of review in these matters is deferential, and the "chancellor's findings will not be disturbed on appeal unless manifestly wrong, clearly erroneous or an erroneous legal standard was applied." *Hockaday*, 644 So. 2d at 448.

> Courts of equity in determining whether an award of alimony in a divorce should be modified should consider the present status of the parties and inquire into their respective earning abilities and probable future prospects and all other circumstances which might bear on the subject, such as age, sex, health and station in life.

*Spradling v. Spradling*, 362 So. 2d 620, 623 (Miss. 1978).


The "general rule is that the wife is entitled to a reasonable allowance of alimony commensurate with her accustomed standard of living and the ability of the husband to pay." *Hockaday v. Hockaday*, 644 So. 2d 446, 448 (Miss. 1994). The evidence reflected that Sandra's business was not profitable. She had some money from her father; however, much of it was pledged as collateral for a business loan. The marital home was struck by lightning and burned, forcing Sandra to relocate during renovations. Even though much of this was covered by insurance, Sandra did incur expenses as a result of the relocation. In addition, the $10,000 per year that Sandra received in alimony was scheduled to end in 1998. There is nothing in the record to demonstrate that Sandra's ability to maintain her accustomed standard of living had improved. Furthermore, William's income had increased substantially; in fact he admitted that he was able to afford the alimony payments. Therefore, the chancellor properly ruled that no change in circumstances had been proven, such that reduction or termination of alimony was warranted. *See Hockaday*, 644 So. 2d at 450; *Spradling*, 362 So. 2d at 625.

### B.. Whether the trial court erred in denying the request of Emily Ashford, age 18, to have her father as custodial parent?

William next argues that, pursuant to Mississippi statute, the chancellor should have granted 18-year-

old Emily's request for William to be her custodial parent. William also contends that the chancellor erred by failing to make an on-the-record finding as to why Emily's best interests were not served by having William as a custodial parent.

The chancellor ruled that Sandra and William would have joint legal custody of Emily, who was attending college in Alabama. The chancellor also held that Emily's primary physical custody should remain with Sandra.

> The law in child custody cases is well-settled. For the custody decree or order to be modified so as to transfer custody to the non-custodial parent, the non-custodial parent must prove that since the entry of the decree or order sought to be modified, a material change of circumstances has occurred within the custodial home which adversely affects the child's welfare. **Tucker v. Tucker**, 453 So.2d 1294 (Miss.1984); **Phillips v. Phillips**, 555 So.2d 698 (Miss.1989). In considering this alleged change, the court should view the evidence within the totality of the circumstances, and not base a finding on an isolated incident. Once the material change has been found, a change in custody is in order only if it would be in the best interest of the child involved. **Spain v. Holland**, 483 So.2d 318 (Miss.1986). A chancellor's finding of fact on such a matter will not be set aside or disturbed on appeal unless the finding is manifestly wrong, or is not supported by substantial credible evidence. . . Miss. Code Ann. § 93-11-65 (Supp.1990) . . . provides in part: Provided, however, that if the court shall find that both parties are fit and proper persons to have custody of the children, and that either party is able to adequately provide for the care and maintenance of the children, and that it would be to the best interest and welfare of the children, then any such child who shall have reached his twelfth birthday shall have the privilege of choosing the parent with whom he shall live.

> * * *

> *We find that when the chancellor denies a child his choice of custodial parent under § 93-11-65, then the chancellor must make on-the-record findings as to why the best interest of the child is not served.*

*Polk v. Polk*, 589 So. 2d 123, 129-30 (Miss. 1991) (emphasis added).

In the case at hand, Emily, age 18, chose to live with her father. The chancellor awarded physical custody to her mother. In doing so, the chancellor was required to make an on-the-record determination that physical custody in Sandra was in Emily's best interest. ***See Id.*** This Court holds that the chancellor erred by not doing so in the case *sub judice*. Absent compelling reasons, the request of 18-year-old Emily to live with her father should have been honored by the chancellor. ***See Id.*** However, because Emily has now reached the age of majority, this issue is moot, and reversal on this issue would serve no practical purpose.

**C. Whether the trial court erred in ordering Dr. William Ashford to pay $15,000 of Sandra Ashford's attorney fees?**

William next argues that the chancellor erred in awarding Sandra $15,000 of her $18,000 in attorney fees.

> "In divorce cases, the award of attorney fees is left to the discretion of the chancellor. The standard for an award of attorney fees on a modification is much the same as in the original action. Attorney fees are not awarded . . . unless the party requesting fees is financially unable to pay them."

*Varner v. Varner*, 666 So. 2d 493, 498 (Miss. 1995) (citations omitted); *Owen v. Gerity*, 422 So. 2d 284, 289 (Miss. 1982) ("the allowance of an attorney's fee has been held erroneous where the wife has ample means to engage the services of an attorney").

"A chancellor has broad authority and discretion in setting appropriate attorney's fees . . ." *Owen v. Gerity*, 422 So. 2d at 288-89. "This Court will not reverse the chancellor on an award of attorney fees unless manifest error is revealed by the record." *Sester v. Piazza*, 644 So. 2d 1211, 1216 (Miss. 1994).

Although William asserts that Sandra was capable of paying these fees, there is evidence in the record to refute this assertion. Sandra presented evidence that she was seriously in debt and that much of her available liquid assets had been pledged as collateral for a $75,000 business loan. There was also ample evidence that Sandra's business was not making a profit. Therefore, considering the discretion allowed a chancellor in awarding attorney fees, it cannot be said that the chancellor committed manifest error by awarding Sandra partial attorney fees in this case.

> It is impossible for this Court to lay down any hard and fast rules with reference to the fixing of attorney's fees in this type of case, and any attempt to do so would be most inappropriate and unwise. It is especially true in divorce cases that circumstances alter cases and that the chancellor should have wide authority and discretion in setting appropriate attorney's fees after carefully considering the facts of each case.

*Hartley v. Hartley*, 317 So. 2d 394, 395 (Miss. 1975). The chancellor did not commit manifest error in ordering William to pay $15,000 of Sandra's attorney fees.

**D. Whether the trial court erred as a matter of law in denying a motion for supersedeas?**

William's final argument is that the trial court should have allowed him to file a supersedeas bond. Mississippi Rule of Appellate Procedure 8(a) provides in part:

> The appellant shall be entitled to a stay of execution of a money judgment pending appeal if the appellant gives a supersedeas bond, payable to the opposite party, with two or more sufficient resident sureties, or one or more guaranty or surety companies authorized to do business in this state, in a penalty of 125 percent of the amount of the judgment appealed from...

Support payments differ from money judgments in that they vest in the recipient each month. *See generally McNeil v. McNeil*, 607 So. 2d 1192, 1197 (Miss. 1992). For this reason, the chancellor's judgment in this case could not be superseded by the posting of a bond. William's argument to the contrary is without merit.

## IV. LEGAL ANALYSIS OF ISSUES ON CROSS-APPEAL

**A. Whether the trial court should have increased child support further because there was a**

**material change in Dr. William Ashford's income?**

Sandra contends that, according to the statutory guidelines, a non-custodial parent should pay 20% of his or her gross income in child support for two children. William's gross income for 1992 was over $900,000. Since 1986, William had paid Sandra a total of $1,500 per month for support of both children. Upon Sandra's cross-motion for modification, the chancellor ordered William to pay $1,800 per month: a) $900 per month for John Clay's child support directly to Sandra, b) $150 per month of Emily's child support directly to Sandra, and c) $750 per month of Emily's child support into a joint account for Sandra and Emily. Sandra argues that she was entitled to more than a $300 per month increase in child support payments.

"Chancery courts may modify final decrees which pertain to child support. This authority exists by statute as well as by virtue of the inherent power of the chancery court." ***McEachern v. McEachern***, 605 So. 2d 809, 813 (Miss. 1992). This Court has allowed for consideration of an increase in child support where the children have advanced in age, inflation has continued to rise, and the ex-husband's income had increased substantially since the divorce; therefore, there is precedent for the chancellor's order increasing the amount of child support from $1,500 to $1,800 per month. ***See Id. See also Bracey v. Bracey***, 408 So.2d 1387, 1390 (Miss. 1982)

With regard to whether the chancellor should have increased the child support award even further: "Although the statutory guidelines for child support work as a rebuttable presumption, in modifying an award of child support the chancellor cannot apply the guidelines to the exclusion of the individual factors affecting former spouses and their children." ***McEachern***, 605 So. 2d at 813. Indeed, "the guidelines may not determine the specific amount of support required. This is a job for the chancellor, who has special knowledge of the actual circumstances." ***Id.***

Nonetheless, the chancellor who deviates from the statutory child support guidelines is required to make an written determination that the guidelines do not apply. Miss. Code Ann. § 43-19-101(2). William earned between $900,000 and $1,000,000 per year. The chancellor ordered him to pay $1,800 per month in child support, or $21,600 per year (less than 3% of his gross income). Miss. Code Ann. § 43-19-101(1) raises the presumption that Sandra should have been awarded child support in the amount of 20% of William's adjusted gross income. Furthermore, Miss. Code Ann. § 43-19-101(4) requires that the chancellor make a written finding in the record as to the applicability of the guidelines where the adjusted gross income of the paying spouse is more than $50,000. The chancellor in this case made no written findings regarding the application of the statutory guidelines. For this reason, this case is remanded on cross-appeal for a determination of whether the presumption set forth in the statute has been rebutted in this case.

**B. Whether attorney fees for purposes of this appeal should be awarded to Sandra Ashford?**

Upon due consideration, this Court finds that Sandra is not entitled to attorney fees on appeal.

### V. CONCLUSION

The issues raised by the appellant in this case are without merit or moot. Therefore, the judgment of the trial court is affirmed with regard to the appeal. This case is reversed on cross-appeal and

remanded for a written, on-the-record determination regarding the applicability of the statutory guidelines on child support. The appellee is not entitled to attorney fees on appeal.

**DIRECT APPEAL: JUDGMENT IS AFFIRMED. CROSS-APPEAL REVERSED AND REMANDED.**

**SULLIVAN, P.J., PITTMAN, BANKS AND SMITH, JJ., CONCUR. DAN LEE, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY McRAE AND MILLS, JJ. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY LEE, C.J. ROBERTS, J., NOT PARTICIPATING.**

**DAN LEE, CHIEF JUSTICE, DISSENTING:**

I must respectfully dissent to my colleagues in the majority, for Sandra Ashford has experienced in all respects a material change in circumstance that necessitates the modification of periodic alimony. Further, it is apparent from the record that Sandra Ashford approaches the court of equity with unclean hands as to the litigation of her financial change in circumstance, and that this condition further necessitates remand to the chancery court to have the periodic alimony award reduced or eliminated. As I am of the opinion that Sandra Ashford is not entitled to prevail in this matter, I also must dissent to the award of attorney's fees in her favor in the amount of $15,000. Finally, I write to point out some disagreement with the majority opinion concerning the chancellor's authority to award child support in an amount less than that called for in the guidelines provided by Miss. Code Ann. § 43-19-101. A full reading of the statute makes clear that the result of applying the percentage enumerated in the child support guidelines is less likely to be reasonable when the payor is one whose income is less than $5,000 or more than $50,000, for the percentages in the statute were written primarily to assist the chancery court when it encounters, as is the case more often than not, those with moderate incomes falling within the given range. See Miss. Code Ann. § 43-19-101(4). While I agree that Miss. Code Ann. § 43-19-101(4) provides that the chancellor must make a written finding that it is either reasonable or unreasonable to apply the guidelines to any person with an income in excess of $50,000, I feel it necessary to point out that the tenor of the majority opinion seems to suggest that the chancellor may be in error if she does not apply the guidelines and award the statutorily suggested 20 percent in this case. As I feel that such a message could be interpreted to unduly restrict the range of discretion possessed by the chancellor when faced with a support issue and a payor spouse earning less than $5,000 or more than $50,000, I am compelled to write.

The record demonstrates that William Ashford was granted a divorce from Sandra Ashford on the ground of habitual cruel and inhuman treatment. It has long been the case that no one has an absolute right to alimony, and alimony is not often awarded to a spouse who has been determined to be the offending party. *Beacham v. Beacham*, 383 So. 2d 146, 147 (Miss. 1980). If the court determines that the spouse seeking alimony has precipitated the marital discord, the offending spouse is to be given alimony only where "the wife is without estate and has no means of support or the husband's property is an accumulation of the joint efforts of the parties, or where the wife is sick and unable to earn a livelihood." *Id*.; see also *Retzer v. Retzer*, 578 So. 2d 580, 593 (Miss. 1990) ("[a]n exception to this rule has been made in cases where . . . the wife has no means of livelihood"); *Pratt v. Pratt*, 623 So. 2d 258, 262-63 (Miss. 1993) ("In those cases . . . , the husband not only had the ability to

pay alimony but also the wife was unable to make a living or support herself"); *Smith v. Smith*, 614 So. 2d 394, 397 (Miss. 1993). If this were the case at the time of the original divorce decree, then the record demonstrates that Sandra has certainly undergone a material change in circumstances, and that no reason exists to justify continued alimony payments.

Sandra Ashford is the designer of a line of fashions known until recently as "The Ashford Collection." The evidence presented at trial demonstrated that in the seven years prior to the modification hearing, the success of this venture allowed Sandra to increase the amount of wages paid to her employees fivefold, from $10,500 to more than $50,000. Gross receipts apparently grew to $146,203.61 in 1992, and the Ashford line of clothing was advertised in several magazines with a regional circulation. Based upon this evidence, it is simply impossible to conclude that Sandra Ashford is "unable to earn a livelihood." *Beacham*, 383 So. 2d at 147.

Sandra Ashford's bookkeeper, Richard Buford, testified that he never saw the actual invoices that were used in the business, and that any other money coming to the business could be hidden from him if the owner failed to report the income. Jessica Minter, a former IRS official, testified that there was a $9,100 discrepancy between sales invoice totals and deposits during a sixth-month period in 1992. Testimony also demonstrated that Sandra's employees were at times paid in cash. Further, Minter testified that Sandra Ashford maintained two separate business accounts, and that the record-keeping was so poor that no audit could be accurately performed.

The fact that Sandra Ashford has not kept records in a manner which will allow a full and fair examination of her income also leaves William Ashford without a full and fair opportunity to litigate a motion based upon a material change in circumstances. This condition leaves Sandra Ashford with unclean hands as to this aspect of the litigation. See *Brennan v. Brennan*, 605 So. 2d 749 (Miss. 1992) (applying clean hands doctrine to a party in a modification case). After originally receiving a divorce on grounds of habitual cruelty and then paying $2,200 per month in periodic alimony, and more recently faced with litigating over financial records which are difficult to substantiate, William Ashford is clearly entitled to some relief.

In *Beacham v. Beacham*, 383 So. 2d 146, 147 (Miss. 1980), this Court discontinued an award of alimony where it could not be said that the ex-wife was in any sense "needy, in poor health, or unable to lead an independent life with ample means of support without alimony payments, or alternatively a lesser amount." Sandra Ashford's own testimony has clearly demonstrated that she is a businessperson capable of overseeing several employees. Her health and age do not at all seem to play a factor in the chancellor's finding that alimony should not be decreased or ended, for she is apparently an able person who is highly skilled and who has significant earning capacity. At the time of this appeal, both of the children will have reached or passed college age, and Sandra Ashford therefore has no small children from this marriage to support.

In light of the evidence that William Ashford originally received a divorce from his wife on grounds of habitual cruelty, and in light of Sandra Ashford's continued good health, job skills, income potential, separate estate, and also her inability to furnish business records sufficient to allow a full investigation and litigation of her financial status, I am of the opinion that the chancellor abused her discretion in failing to decrease or discontinue the amount of periodic alimony.

As William Ashford should have prevailed in his petition to modify the alimony payments, neither is

Sandra Ashford entitled to receive payment of her attorney's fees from him. This Court has held that an award of attorney's fees is permissible in a modification suit only where one spouse demonstrates an inability to pay. ***Brooks v. Brooks,*** 652 So. 2d 1113 (Miss. 1995); ***Smith v. Smith***, 614 So. 2d 394 (Miss. 1993); ***Cheatham v. Cheatham***, 537 So. 2d 435 (Miss. 1988). Just as in ***Smith***, in which the award of attorney's fees was found to be an abuse of discretion, Sandra "is college educated, physically capable of employment, and owns her own business." ***Id***. at 398. Also, there was certainly no finding by the chancellor that William Ashford brought this modification suit in bad faith. Further, our jurisprudence places the burden upon Sandra Ashford of proving that she was unable to pay her attorney's fees. ***Brooks v. Brooks,*** 652 So. 2d 1113, 1119 (Miss. 1995). Given all of the evidence as well as the status of the financial records kept by Sandra Ashford, the chancellor abused her discretion in concluding that Sandra provided proof that she was unable to pay her attorney's fees, and in ordering William to pay $15,000 of those fees.

The chancellor also found that the amount of child support payments should increase by $300 per month, and did not follow the suggested child support percentage delineated in Miss. Code Ann. § 43-19-101(1). As the Ashfords had two minor children at the time of the modification suit, the statutory guidelines called for the payor spouse to devote 20 percent of his or her adjusted gross income to child support. Also, Miss. Code Ann. §43-19-101(4) provides:

> In cases in which the adjusted gross income as defined in this section is more than Fifty Thousand Dollars ($50,000.00) or less than Five Thousand Dollars ($5,000.00), the court shall make a written finding in the record as to whether or not the application of the guidelines established in this section is reasonable.

Though I agree that the chancellor did not make the required record finding as to the reasonableness of applying the statutory guidelines, I feel that both the statute and the case law grant the chancellor a great deal of discretion in making such an award. These statutes are not mandatory guidelines to which the chancellor must adhere, but rather are guideposts meant to assist the chancellor. ***Gillespie v. Gillespie***, 594 So. 2d 620, 623 (Miss. 1992). Likewise, in light of the above language from Miss. Code Ann. § 43-19-101(4), it is apparent that the statute is generally less likely to provide a valid indicator in terms of a percentage which the payor spouse should be ordered to pay where that person makes less than $5,000 or more than $50,000 per year. The greater the amount that the payor's income differs from that given range, the greater the likelihood that applying the stated statutory percentage would be unreasonable, and thus the greater the chancellor's discretion should be to deviate from the guidelines. To the extent that the majority implies that the lower court may have erred in ordering William Ashford to pay less than the statutory 20 percent in this case, I therefore respectfully dissent.

     **McRAE AND MILLS, JJ., JOIN THIS OPINION.**


     **McRAE, JUSTICE, DISSENTING:**

With this dissent, I take issue with several of the majority's rulings on William Ashford's points of error. The chancellor erred by incorrectly applying the standards regarding the child's choice of parent. The chancellor also erred in increasing the amount of child support paid by William and in ordering William to pay $15,000 of Sandra Ashford's attorney fees, as both amounts were excessive

and unwarranted.

Pursuant to Mississippi statute, the chancellor should have granted Emily Ashford's request for her father, William, to be her custodial parent. **Miss. Code Ann.** § 93-11-65 provides in part

> that if the court shall find that both parties are fit and proper persons to have custody of the children, and that either party is able to adequately provide for the care and maintenance of the children, and that it would be to the best interest and welfare of the children, then any such child who shall have reached his twelfth birthday shall have the privilege of choosing the parent with whom he shall live.

I wholly agree with the majority that the chancellor erred by not making an on the record determination that physical custody in Sandra was in Emily's best interest. Because she was eighteen years old at the time of the modification, Emily's decision should have been honored by the chancellor. However, Emily's decision that she wanted to stay with her father is *not* moot, because it goes to the determination of whether there has been a material change in circumstances warranting modification. *See* **Polk v. Polk**, 589 So. 2d 123, 130 (Miss. 1991)(finding that, as to whether there has been a substantial and material change in circumstances, the lower court should consider the child's decision to live with mother and the child's qualification to have his wishes considered under § 93-11-65). Accordingly, reversal on this issue is warranted.

In light of her failure to correctly consider the custodial preferences of Emily, the chancellor also erred in increasing the amount of child support. Because the chancellor left primary physical custody of Emily with Sandra, despite Emily's wishes, William was unfairly forced to pay an increased amount of child support. But for the chancellor's erroneous determination of Emily's physical custody, the chancellor would have no basis for increasing the child support amount, as evidenced by the chancellor's failure to make any written findings regarding the application of guidelines in determining such an increase in child support. This decision should also be reversed.

Usually, the matter of attorney fees and costs in divorce cases is largely entrusted to the sound discretion of the chancellor. However, when the chancellor abuses her discretion, as was the case here, reversal of that award is necessary. By awarding $15,000 in attorney fees to Sandra, the chancellor manifestly erred, based on the circumstances present. Although there may be some evidence that supports her claim of attorney fees, it is far from enough to sustain her burden of proving that she was unable to pay. **Brooks v. Brooks**, 652 So. 2d 1113, 1119 (Miss. 1995). The chancellor's award of $15,000 was excessive.

It is for the above reasons that I dissent.

**LEE, C.J., JOINS THIS OPINION.**