566 So.2d 1269 (1990)
Michael William BRENDEL
v.
Ellen Skipper BRENDEL.
No. 89-CA-530.
Supreme Court of Mississippi.
September 5, 1990.
*1270 Don A. McGraw, Jr., Montgomery Smith-Vaniz & McGraw, Canton, for appellant.
J.M. Ritchey, Canton, for appellee.
Before DAN M. LEE, P.J., and ANDERSON and PITTMAN, JJ.
PITTMAN, Justice, for the Court:
Ellen Brendel filed suit for divorce in Madison County Chancery Court, alleging habitual cruel and inhuman treatment on the part of her husband, Michael Brendel. The chancery court found in favor of Mrs. Brendel, awarding her $750.00/month periodic alimony and an undivided one-half interest in the marital home as the result of an oral agreement made between the parties. Michael Brendel appeals, assigning as error:
I. WHETHER THE PERMANENT PERIODIC ALIMONY IN THE AMOUNT OF $750.00 A MONTH GRANTED TO THE APPELLEE BELOW IS UNDULY BURDENSOME, EXCESSIVE AND MANIFESTLY WRONG.
II. WHETHER THE TRIAL COURT ERRED IN VESTING THE APPELLEE WITH AN UNDIVIDED ONE-HALF (1/2) INTEREST IN JOINTLY ACCUMULATED REAL PROPERTY.
Ellen and Michael Brendel were married on December 14, 1985. They had no children during their marriage, although Ellen had custody of her son, Ryan, from her first marriage. Ryan was eight years old at the time of the hearing in this cause, and Ellen received $300.00/month from Ryan's father for his support.
The Brendels separated on or about May 17, 1988. On June 3, 1988, Ellen Brendel filed her Complaint for Divorce, alleging uncondoned adultery, habitual cruel and inhuman treatment, habitual drunkenness, and irreconcilable differences. She asked for alimony, attorney's fees, and exclusive use and possession of the former marital home, located at 161 Napa Valley Circle in Madison, Mississippi. On June 7 she filed an amended complaint, asking that a lien be impressed against her husband's real property to secure the payment of the requested alimony. She further alleged that she and her husband had made an oral agreement, such that she would deed to him a one-half interest in her home, which she owned in its entirety before she married Mr. Brendel, and in return he would deed her an undivided one-half interest in the marital home at Napa Valley Circle. She alleged that her husband had reneged on the agreement, and despite the fact that she had become jointly indebted with her husband for the Napa Valley home, Michael Brendel had never conveyed to her any interest in it. Because of this she asked for the one-half interest in the marital home that she alleged had been promised to her.
Ellen Brendel filed a motion for temporary alimony on June 17, and this resulted in an order allowing Mrs. Brendel exclusive use and possession of the Napa Valley home pending the divorce hearing, with Michael Brendel to pay the mortgage payments. Mrs. Brendel did not receive any temporary alimony.
The hearing in this cause was held on August 30 and 31, 1988. Ellen Brendel testified to numerous incidents of physical and mental cruelty starting in August, 1986, and continuing through May, 1988, the time of the separation. Michael Brendel *1271 admitted some of the incidents, and alleged that Ellen was as much an instigator as he was. The divorce is not an issue on appeal.
The rest of the hearing involved the respective financial situations of the parties and the details of the transactions involving the marital home at Napa Valley, and the home Ellen Brendel had owned before the marriage, in Ridgeland, Mississippi. Much of the testimony is not disputed. When the Brendels married, Ellen Brendel owned her home in Ridgeland, and Michael Brendel owned the unimproved lot at Napa Valley. The Brendels lived in the Ridgeland home from the time they married until December 30, 1986. They orally agreed that Ellen would convey a one-half interest in the Ridgeland home to Michael, and he would convey a one-half interest in the Napa Valley property to her. Ellen conveyed this interest to Michael on October 24, 1986. On the same day Michael and Ellen refinanced the Ridgeland property, with Ellen receiving $4,464.43 in net proceeds. On December 30, 1986, the Brendels sold the Ridgeland property. The total sale price of the home was $73,402.61, with the net proceeds totalling $4,194.92. Ellen Brendel placed the $8,659.35 in proceeds from these two transactions in a savings account. Michael Brendel never conveyed any interest in the Napa Valley property to his wife. According to Ellen Brendel, she did not realize this until their separation.
The loan closed on the Napa Valley property on March 4, 1987. The Brendels had an understanding that approximately $7,000.00 from the proceeds Ellen had received from the sale of the house in Ridgeland would go toward the Napa Valley property, with the rest to pay off some of her VISA bill. The Brendels signed a note with Homestead Savings and Loan for $107,200.00. The note provided for joint and several liability on behalf of the Brendels. The Brendels, also on that day, executed a deed of trust. The deed of trust listed the grantors as Michael and Ellen Brendel, joint tenants with right of survivorship. Ellen Brendel testified that these documents were explained to her as she signed them, and as a result she believed that at this time she owned a one-half interest in the Napa Valley property. The monthly mortgage payment to Homestead was $963.00.
Michael Brendel testified at some length concerning the Napa Valley property. He stated that he had paid $23,500.00 for the property, $5,000.00 in cash. He denied that $5,000.00 represented his total investment. Brendel said that he didn't realize that Ellen Brendel was listed on the deed of trust as a joint tenant with right of survivorship when in reality she owned no interest in the Napa Valley property, and denied that he instructed the attorney who handled the closing to put this on the deed of trust. Brendel denied that the true closing costs were $8,362.30, and that Ellen Brendel had in fact paid almost that entire amount at the closing. Later Brendel testified that he had contributed $13,937.17 to the Napa Valley property plus money for landscaping.
As for her contributions to the Napa Valley home, Ellen Brendel testified that she supplied her refrigerator and washer and dryer. She further stated that she decorated the home. She also stated that she helped Michael in his real estate business by answering the phone at their home when he was gone, helping him with open houses, decorating the homes he built, bringing him one customer which resulted in a sale, and redesigning one home so that it would sell. Ellen admitted that Michael had made all the mortgage payments since March, 1987. Michael denied that she had helped him in his business or at open houses. He also denied that she had ever redesigned a kitchen, but admitted that she had helped arrange two contacts, one of which led to a sale.
The two parties also testified as to their personal expenses. Ellen Brendel testified that she worked as a receptionist, had done so since March 1985, and her net salary was $910.46/month. As stated, she received $300.00/month child support. She testified that her expenses were $1,062.00/month, and those of her son were $409.00/month. She also stated that she *1272 would need $200-300.00/month alimony, and housing for herself and Ryan, not including utilities, would be around $500.00. Counsel for Mrs. Brendel also offered evidence on attorney's fees, saying that so far the bill for services had come to approximately $6,300.00, and Mrs. Brendel had paid him $2,300.00.
Michael Brendel, a real estate broker, testified to an adjusted gross income of $67,747.00 in 1987, and a total gross income for the couple of $84,156.00. He stated that 1987 was the best year he had ever had. The couple's total gross income in 1986 was $52,797.00. Michael testified that his total gross income for 1988 through August was running $20,000.00 below what it had been for 1987. He testified to total assets of $388,000.00 and total liabilities of $372,000.00. Brendel introduced several exhibits detailing his personal and business expenses. Among his personal expenses were monthly payments of $750.00 alimony to his first wife and $500.00 child support. According to Brendel his personal expenses in August, 1988, exceeded his personal income by approximately $1500.00. On cross-examination Brendel was questioned about his business income and expenses, and particularly about his rental income and his automobile. Brendel testified that he drove a 1988 BMW 505, for which he had paid $32,500.00. He had equipped the car with a telephone. The expenses on the car alone totalled approximately $865.00 per month, or about 25% of Brendel's business expenses.
The chancellor awarded Ellen Brendel a divorce based on habitual cruel and inhuman treatment. He awarded her $750.00/month alimony and $1,000.00 in attorney's fees. Because of the oral agreement between the parties concerning the transfer of interests in their respective properties, and because Ellen Brendel had obligated herself on the note and deed of trust on the Napa Valley home without receiving an interest in it as promised, the chancellor awarded her a one-half interest in the Napa Valley property.

I. WHETHER THE PERMANENT PERIODIC ALIMONY IN THE AMOUNT OF $750.00 A MONTH GRANTED TO THE APPELLEE BELOW IS UNDULY BURDENSOME, EXCESSIVE AND MANIFESTLY WRONG.
Michael Brendel argues first that the award of $750.00/month alimony was error. Alimony, if allowed, should be reasonable in amount, first deducting the resources of the wife and then finding an amount commensurate with the wife's accustomed standard of living, and considering the ability of the husband to pay. As long as the chancellor follows this general standard, the amount of the award is largely within his discretion. Wood v. Wood, 495 So.2d 503, 506 (Miss. 1986); Miss. Code Ann. § 93-5-23 (Supp. 1989). The chancellor should consider the reasonable needs of the wife and the right of the husband to lead as normal a life as possible with a decent standard of living. Massey v. Massey, 475 So.2d 802, 803 (Miss. 1985). The familiar factors set out for consideration in Brabham v. Brabham, 226 Miss. 165, 84 So.2d 147 (1955), are cited and relied on by both parties. Those factors are:
(1) the health of the husband and his earning capacity;
(2) the health of the wife and her earning capacity;
(3) the entire sources of income of both parties;
(4) the reasonable needs of the wife;
(5) the reasonable needs of the child;
(6) the necessary living expenses of the husband;
(7) the estimated amount of income taxes the respective parties must pay on their incomes;
(8) the fact that the wife has the free use of the home, furnishings, and automobile, and
(9) such other facts and circumstances bearing on the subject that might be shown by the evidence.
Brabham, 226 Miss. at 176, 84 So.2d at 153. Periodic alimony comes from the duty of the husband to support his wife. East v. East, 493 So.2d 927, 931 n. 2 (Miss. 1986). As is usual with a question like this, both *1273 parties cite numerous cases with allegedly analogous fact situations.
Michael Brendel argues that he does not have the resources to pay $750.00 without burdening himself in an unreasonable manner. Brendel is in real estate, a speculative business, and his success will vary with factors over which he has no control, such as the state of the economy and interest rates. His business requires the investment of sometimes large amounts of capital. Many of his business and personal expenses are legitimate. Some are clearly not, such as the monthly outlay for his luxury automobile. Considering Brendel's expenses, and his income even in less than optimum years, as he alleged 1988 was, we cannot say that the award is beyond Brendel's reasonable ability to pay.
However, the award of $750.00/month is a very generous one. The chancellor obviously considered Ellen Brendel's testimony on what she would need as far as expenses, $200-300.00/month, and what she would need for housing, $500.00. Michael Brendel argues that it is not his duty to provide anything for Ryan, and he is correct. According to Ellen's income and expense statement, Ryan's expenses exceed her monthly child support by approximately $100.00. Also, at least part of the housing allowance which the chancellor evidently awarded is going for Ryan's housing. To the extent that Michael pays for Ryan's support, the chancery court erred in its decision, and this Court therefore will modify the award of periodic alimony so that $600.00/month is allowed. Hopton v. Hopton, 342 So.2d 1298 (Miss. 1977). This reduction disallows that portion of the award which would go toward Ryan's expenses.

II. WHETHER THE TRIAL COURT ERRED IN VESTING THE APPELLEE WITH AN UNDIVIDED ONE-HALF (1/2) INTEREST IN JOINTLY ACCUMULATED REAL PROPERTY.
In her amended complaint for divorce, Ellen Brendel alleged that she and Michael had agreed that she would convey to him a one-half interest in her home, and he would in turn convey to her a one-half interest in the marital home at Napa Valley. In the chancery court Ellen asked for and received an undivided one-half interest in the Napa Valley home. Michael argues on appeal that the chancellor erred in awarding the one-half interest because Ellen's financial contributions in obtaining the property did not amount to a one-half interest. Watts v. Watts, 466 So.2d 889 (Miss. 1985), dealt with a fact situation very similar to the one at bar. This Court affirmed in Watts the requirement that the husband deed to his wife, incident to their divorce, an undivided one-half interest in twenty acres of real property which was solely in the husband's name, recognizing that "[t]he second exception to the general rule against divestiture of realty is where the property has been jointly accumulated by the parties, and the chancellor makes an equitable division of it." Watts, 466 So.2d at 890. There are other remedies available in a situation such as this, i.e. a substantial award of lump sum alimony, or an equitable lien placed on the realty in question in favor of one spouse. Jones v. Jones, 532 So.2d 574 (Miss. 1988). Because we find that the Napa Valley property was jointly accumulated property, and because Ellen Brendel is jointly and severally liable on the note and deed of trust which pertains to that property, the chancellor committed no error in requiring that she receive an undivided one-half interest in the Napa Valley property. The judgment of the chancery court is affirmed as modified.
AFFIRMED AS MODIFIED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and BLASS, JJ., concur.
DAN M. LEE, P.J., concurs in result only.