PITTMAN, Justice,
for the Court:
On April 1, 1991, the Chancery Court of Harrison County, First Judicial District, granted Joyce Wills Tilley a divorce from her husband of twenty-two years, Richard Howard Tilley, on the grounds of habitual *350 cruel and inhuman treatment. In the divorce decree, Joyce Tilley was granted lump-sum alimony (in the amount of $150,-000), periodic alimony ($1,500 per month), and child support ($1,500 per month) and other cost items more fully set out in the discussion of Section III of this opinion. Richard Tilley, aggrieved at the amount of support awarded his ex-wife, appeals asserting as error:
A. The trial court was in error, as a matter of law, in awarding lump sum alimony, or in the alternative, in awarding lump sum alimony in the amount ordered.
B. The trial court was in error, as a matter of law, in awarding support and ordering the payment of other financial obligations which are, in the aggregate, excessive, and deprive the appellant of a reasonable standard of living, and in ordering some elements of support which are so indefinite as to be void and/or encourage future litigation.
I.
Joyce Wills Tilley married Richard Howard Tilley February 14, 1969, in Livingston, Alabama. The couple lived together as husband and wife until July 15, 1990, when they separated and Richard left the marital home. During the marriage, three children were born: Allison Delaine Tilley, born February 7, 1974; Lisa Diane Tilley, born September 27, 1975; and Jason Daniel Til-ley, July 2, 1979. Joyce and the three children have been living in the marital home in Long Beach since the separation.
When Joyce and Richard were married in Alabama, both were attending the University of Southern Mississippi. Richard was a junior in pre-med and Joyce a sophomore taking secretarial courses. Following the marriage, Joyce quit school and went to work full time. Throughout the marriage, Joyce worked to help support the couple and to help Richard’s internal medicine practice. Joyce did take time off when she had the children, sometimes for a year or more. She later worked for another doctor and at the time of trial, full time at Sands Hill Hospital.
Other than an IRA, Joyce has no savings account, stocks or other income. She has an interest in the homestead and owns her car. Her gross income per month from Sands Hill Hospital is $1,061.90; she nets $768.04. Joyce listed her monthly expenses as follows: mortgage, $1,450; residence maintenance, $300; food and household supplies, $1,000; utilities, $345; telephone, $80; laundry and cleaning, $100; clothing, $600; medical, $400; dental, $50; insurance, $250; child care, $400; school, $170; entertainment, $1,100; incidentals, $400; auto expense, $500; installment payments, $388; and other expenses, $1,325. Joyce testified the entire family traveled frequently, and the two girls went to Europe during the summer of 1990, for which she owes money. The house is valued at $150,000, she said.
Richard Tilley testified he moved into an apartment in Gulfport, for which he pays $900 monthly. Richard is a sole practitioner but shares overhead of the building with four other physicians. He has a one-fifteenth interest in his office building, which has been appraised at $2.4 million. It should be debt free in the year 2000. Richard has a one-third interest in a fifty-three foot boat named the “Two-Timer,” on which he pays $250 monthly on a never ending note.[1] Richard drives a 1981 Toyota station wagon and also has a 1983 Jimmy truck which the family has been using some. Joyce drives a 1980 733 BMW.
The doctor’s adjusted gross income in 1988 was $152,000; 1989, $114,000. Richard agreed that he and his family have enjoyed a high standard of living. He said he expected his future income to drop some because the clinic is incorporating, a new partner is coming in, and Medicare payments have become tighter. However, Richard was about to enter into a contract with Memorial Hospital under which he *351 alone would be paid $2,500 monthly, or $30,000 a year.
Richard testified his liabilities meet his assets. His assets and liabilities are both listed at $396,765.16; his wife’s are listed at $113,856.89.[2] Richard lists his monthly living expenses as $4,883.45, comprised of rent, $900; laundry, $60; food, $350; clothing, $60; medical, $40; insurance, $1,300; entertainment, $200; incidentals, $100; auto expense, $250; auto payment, $445.43; installment payments, $1,060.69; and medical dues, $177.33. Richard said he only received a monthly net income of $6,500.00 in 1990, and doesn’t expect that to increase.
Joyce testified she was so upset by her marriage she sought counseling. The children are also seeing a clinical psychologist because of problems brought on by the divorce. Two of the children don’t need psychological counseling, Richard said. The third child does, but not to the extent recommended by the psychologist, he said.
II.
DID THE TRIAL COURT ERR IN AWARDING LUMP SUM ALIMONY?
This Court’s standard of review is limited in domestic relations cases where the chancery court has decided upon terms of alimony. The chancellor’s decision on alimony will not be disturbed on appeal unless it is found to be against the overwhelming weight of the evidence or manifestly in error. McNally v. McNally, 516 So.2d 499, 501 (Miss.1987) (citing Harrell v. Harrell, 231 So.2d 793 (Miss.1970)). Under the standard of review utilized to review a chancery court’s findings of fact, particularly in the areas of divorce, alimony and child support, this Court will not overturn the court on appeal unless its findings were manifestly wrong. Smith v. Smith, 585 So.2d 750, 753 (Miss.1991); Nichols v. Tedder, 547 So.2d 766, 781 (Miss.1989); Devereaux v. Devereaux, 493 So.2d 1310, 1312 (Miss.1986); Carr v. Carr, 480 So.2d 1120, 1122 (Miss.1985).
However, if the chancery court’s findings were manifestly wrong or the court applied an erroneous legal standard this Court will not hesitate to reverse. Bowers Window and Door Co., Inc. v. Dearman, 549 So.2d 1309 (Miss.1989); Culbreath v. Johnson, 427 So.2d 705, 707-08 (Miss.1983); Johnson v. Hinds County, 524 So.2d 947, 956 (Miss.1988). The amount of alimony awarded is a matter primarily within the discretion of the chancery court because of “its peculiar opportunity to sense the equities of the situation before it.” Holleman v. Holleman, 527 So.2d 90, 94 (Miss.1988) (citing Wood v. Wood, 495 So.2d 503 (Miss.1986)).
In a proper case, the chancellor can award alimony payable in one lump sum or periodic alimony, payable monthly, or both, dependent upon the circumstances of the parties. Miller v. Miller, 173 Miss. 44, 159 So. 112 (1935); McCraney v. McCraney, 208 Miss. 105, 43 So.2d 872 (1950); J.W. Bunkley & W.E. Morse, Amis on Divorce and Separation in Mississippi (1957) § 6.06. This Court has long recognized the discretionary authority of the chancery court to award lump sum alimony.
“It [lump sum] is a settlement between the husband and the wife as to the interest of the latter in his property, and as to the extent of the husband’s duty to contribute to her maintenance and support.
The solution of the question of whether or not an allowance of a gross sum should be made must be determined by the facts of the particular case, having due regard to the best interest of the parties and the husband’s financial ability to respond to an award in gross. Where the husband’s estate is sufficient to enable him to respond to an award in gross, it will often be conducive to the welfare and happiness of both parties to end the relation of debtor and creditor between them by making such an award, and thereby relieve the wife of further dependence upon the continued solvency of the husband and his financial ability to pay a periodical stipend and his continued response to such forced contribu *352 tions without future legal steps to enforce them.”
Miller v. Miller, 173 Miss. 44, 64, 159 So. 112, 119-120 (1935); cited with approval in Retzer v. Retzer, 578 So.2d 580, 591 (Miss.1990).
Retzer traces the flow of Mississippi case law in regard to lump sum alimony from the time period when it was purely discretionary with the chancery court[3] to cases in which spouses were entitled to lump sum alimony based on their contributions to the couple’s assets.[4] Retzer, 578 So.2d at 591. As the law evolved, this Court came up with four factors to be considered in awarding lump sum alimony when the wife is granted a divorce:
1) Substantial contribution to accumulation of total wealth of the payor either by quitting a job to become a housewife, or be assisting in the spouse’s business. Tutor v. Tutor, 494 So.2d 362 (Miss. 1986); Schilling v. Schilling, 452 So.2d 834 (Miss.1984);
2) A long marriage. Jenkins v. Jenkins, 278 So.2d 446, 449 (Miss.1973); Tutor and Schilling, supra.
3) Where recipient spouse has no separate income or the separate income is meager by comparison. Jenkins, Tutor and Schilling, supra.
4) Without the lump sum award the receiving spouse would lack any financial security. Abshire v. Abshire, 459 So.2d 802, 804 (Miss.1984).
Cheatham v. Cheatham, 537 So.2d 435, 438 (Miss.1988); Retzer v. Retzer, 578 So.2d 580, 592 (Miss.1990); Cleveland v. Cleveland, 600 So.2d 193, 197 (Miss.1992). This Court went on to say the single most important factor is the disparity of the separate estates. Cheatham, 537 So.2d at 438.
In the case before us, we see that Joyce Tilley meets the four factors set out above. She worked to help support the family, seemingly at the expense of her own education, and also stayed home to care for the children when the couple decided that was best. She worked on and off throughout the marriage for Richard’s medical practice, certainly contributing to the general welfare of the family’s financial status. The marriage was twenty-two years long — a period of time which undoubtedly qualifies as a long marriage. Joyce Tilley’s monthly income is about $850, while her husband’s is between $7,000 and $10,000. Obviously Joyce’s salary is meager by comparison. The only financial security which Joyce Tilley has is her interest in the house and her IRA of $24,000. The interest in the house is about $70,000. But Joyce will receive no income or firm assets from that until the house is sold after the last child is emancipated, which should be in the year 2000. And ultimately, it is clear there is a large disparity between the two estates. Richard’s estate is valued at more than $300,000, with interests in real estate and boats, while Joyce’s estate is valued at around $100,000, with no separate significant interests from the homestead and her IRA.
Given the foregoing, this Court finds it was not error for the chancellor to award Joyce Tilley lump sum alimony. She clearly deserves lump sum alimony under the factors to be considered. However, we note the amount is subject to reconsideration in light of this opinion.
III.
WAS THE TRIAL COURT’S AWARD OF PERIODIC ALIMONY AND OTHER SUPPORT IN THE AGGREGATE, SO EXCESSIVE AS TO CONSTITUTE AN ABUSE OF DISCRETION?
The foregoing standard of review also applies to the award of periodic alimony and the other provisions of the settlement. Notwithstanding that, this Court has not hesitated in the past to find abuses of discretion and intervene to increase the *353 amount of alimony that the lower court allowed. See Cleveland v. Cleveland, 600 So.2d 193 (Miss.1992); Tutor v. Tutor, 494 So.2d 362 (Miss.1986); Rainer v. Rainer, 393 So.2d 475 (Miss.1981). Likewise, this Court has reduced the amount allowed by the lower court or reversed the award of alimony outright in some cases. Brendel v. Brendel, 566 So.2d 1269 (Miss.1990); Carpenter v. Carpenter, 519 So.2d 891 (Miss.1988); Lowry v. Lowry, 229 Miss. 376, 90 So.2d 852 (1956).
This Court has long considered nine areas when reviewing an award or denial of periodic alimony:
(1) the health of the husband and his earning capacity;
(2) the health of the wife and her earning capacity;
(3) the entire sources of income of both parties;
(4) the reasonable needs of the wife;
(5) the reasonable needs of the child;
(6) the necessary living expenses of the husband;
(7) the estimated amount of income taxes the respective parties must pay on their incomes;
(8) the fact that the wife has the free use of the home, furnishing and automobile, and;
(9) such other facts and circumstances bearing on the subject that might be shown by the evidence.
Brabham v. Brabham, 226 Miss. 165, 176, 84 So.2d 147, 152 (1955); Powers v. Powers, 568 So.2d 255, 259 (Miss.1990). This Court has reaffirmed that the “chancellor should consider the reasonable needs of the wife and the right of the husband to lead as normal a life as possible with a decent standard of living.” Gray v. Gray, 562 So.2d 79, 83 (Miss.1990), cited in Cleveland v. Cleveland, 600 So.2d 193, 197 (Miss.1992). Before considering the nine individual considerations, we should review the judgment of the chancellor and the obligations imposed upon Richard Tilley:
1)Responsibility for the payment of the mortgage(s), taxes, insurance and maintenance over $100.00 on the marital home. Joyce has full use and possession of the house until the last child is emancipated, after which the house is to be sold and the proceeds split.
2) $1,500 monthly in child support.
3) Full hospitalization coverage for the minor children, such as doctor, dental, orthodontic, psychological and eye care.
4) Payment of all private school tuition, payment of college education, and “adequate and safe transportation for the children until they become emancipated.”
5) $1,500 monthly periodic alimony.
6) $150,000 lump sum alimony, payable yearly at $15,000 and the legal rate of interest.
7) Responsibility for keeping life insurance policies in effect to cover all obligations of child support and lump sum alimony.
8) Payment of all debts from marriage.
9) Payment of plaintiff’s attorney’s fees.
Next, we look at the nine factors set out in Brabham in their application to the facts at hand. The health of both parties is generally good[5], but Richard obviously has a much higher earning capacity than his wife. However, it does seem that she will earn about $12,000 a year. It appears the living expenses listed by Joyce are unreasonable. While we want a spouse to maintain a standard of living as close to her married state as possible, it appears some costs listed are unreasonable. Her listed expenses also appear to calculate the children’s needs, which have been provided for through the child support and other considerations. On the other hand, Richard’s listed living expenses seem reasonable. As to income tax, Richard clearly is in the upper bracket.
In Gray v. Gray, 562 So.2d 79, 83 (Miss.1990), this Court said the “chancellor should consider the reasonable needs of the wife and the right of the husband to lead *354 as normal a life as possible with a decent standard of living.” Considering that admonishment, this judgment seems unsettling. Certainly Joyce and the children deserve to enjoy a nice standard of living with many amenities of life. But the blunt truth is that now two families will have to live on the same salaries that once supported one family. There is no way the standard of living can remain as high as it once might have been. The other problem is Richard Tilley’s debt burden.
According to the record, Richard Tilley will have to pay a total of $11,038.34 a month under the terms of the judgment, but only has a monthly net income of $7,306.00. It appears the chancellor was either punishing Richard Tilley for the grounds of divorce, or flatly ignoring his resources. Richard has not even been left enough monthly income for a standard of living, much less a reasonable one. In Mississippi, alimony should be awarded to the wife in accordance with her needs with consideration being given to the ability of the husband to make the payments. Dudley v. Light, 586 So.2d 155, 161 (Miss.1991); Brendel v. Brendel, 566 So.2d 1269, 1272 (Miss.1990). Alimony is not a punishment and should not be so used. Taylor v. Taylor, 348 So.2d 1341, 1344 (Miss.1977) (Smith, dissenting). However, it seems clear the chancellor might have been trying to punish Richard Tilley for his actions.
We find the Chancellor abused his discretion in ordering Richard Tilley to pay aggregate monthly support beyond his means. As such, we reverse and remand to the trial court for determination of a more equitable judgment of support, including both periodic alimony and lump sum alimony, in line with this opinion and this state’s law.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, BANKS, McRAE and ROBERTS, JJ., concur.

. Docking costs and continual repair costs go to the note, so that it is never paid off and continually rolls over.

. That figure represents Richard’s estimate of his wife’s assets and liabilities.

. Aldridge v. Aldridge, 200 Miss. 874, 877, 27 So.2d 884, 885 (1946); see also, Harrell v. Harrell, 231 So.2d 793 (Miss.1970); McCraney v. McCraney, 208 Miss. 105, 43 So.2d 872 (1950); Hopkins v. Hopkins, 174 Miss. 643, 165 So. 414 (1936).

. Jenkins v. Jenkins, 278 So.2d 446 (Miss.1973); Clark v. Clark, 293 So.2d 447, 449 (Miss.1974); Jones v. Jones, 532 So.2d 574 (Miss.1988).

. Richard complains of being tired, and Joyce complains of "health problems” from a car accident. She didn’t elaborate or say how the problem would affect her earning capability.