615 So.2d 564 (1993)
L.B. KILE, Plaintiff-Appellant,
v.
LOUISIANA MEDICAL MUTUAL INSURANCE CO. (LAMMICO), et al., Defendant-Appellee.
No. 92-423.
Court of Appeal of Louisiana, Third Circuit.
March 3, 1993.
Writ Denied May 14, 1993.
Wilbert Joseph Saucier Jr., Pineville, Terry Eli Theriot, Lafayette, for plaintiff-appellant.
Victor Herbert Sooter, Alexandria, for defendant-appellee.
Before DOUCET, YELVERTON and WOODARD, JJ.
WOODARD, Judge.
This appeal arises out of three consolidated lawsuits for medical malpractice. The issue for our review is whether the trial court erred in holding that Dr. F. Clark Sauls did not commit malpractice in treating and performing surgery on Mrs. Lois Kile.

*565 FACTS
In August, 1986, Mrs. Kile underwent coronary by-pass surgery in Houston, Texas. She was discharged from the hospital and was recovering normally when, on October 6, 1986, she visited Dr. P.K. Kaimal, a cardiologist, with complaints of shortness of breath, pain in her chest, and severe fatigue. She was admitted to Rapides General Hospital for treatment. While there, she was diagnosed as having an accumulation of fluid around her heart. This fluid was affecting the functioning of her heart and needed to be removed.
Dr. Kaimal requested that Mrs. Kile be examined by Dr. Sauls, a thoracic and cardiovascular surgeon, for purposes of determining whether she should undergo surgery. After examining Mrs. Kile, Dr. Sauls discussed with Dr. Kaimal whether surgery would be proper. They concluded it would. They were both of the opinion that drug treatment would not be effective in removing the fluid around Mrs. Kile's heart.
The evidence at trial revealed that there are three different surgical procedures used to drain fluid surrounding the heart. Dr. Sauls chose to perform the procedure known as the "subxiphoid pericardial window." Of the three surgical procedures, this one requires the patient to be under anesthesia for the shortest amount of time and generally has the shortest recovery period.
On August 9, 1986, while performing the surgery, Dr. Sauls made a small cut in the sack surrounding the heart called the pericardium. Apparently Mrs. Kile's pericardium had adhered to her heart at that point as a result of the by-pass surgery she had undergone six weeks earlier. Therefore, when Dr. Sauls made the incision in the pericardium, he also cut into the wall of Mrs. Kile's right ventricle.
The incision immediately began to bleed and Dr. Sauls attempted to stop the bleeding with light pressure from his fingertip. Testimony revealed that this procedure usually stops bleeding, but in this instance, the area began to tear and the incision became enlarged. Dr. Sauls was unable to stop the hemorrhaging and Mrs. Kile bled to death. She was 63 years old.
An autopsy performed in August, 1987 revealed that two weeks prior to the subxiphoid surgery, Mrs. Kile had suffered an infarct of the right ventricle (heart attack). This infarct caused the right ventricle to weaken and become like "wet tissue paper." As a result, Dr. Sauls was unable to stop the bleeding by applying light pressure.
These lawsuits were subsequently filed against Dr. Sauls and Louisiana Medical Mutual Insurance Company (LAMMICO) by Mrs. Kile's husband, L.B. Kile, and her children, Timothy Wayne Anding and Wanda Anding Winn, alleging medical malpractice. Specifically, plaintiffs alleged that Dr. Sauls failed to comply with the standard of care in the following areas: (1) in failing to use drug therapy before attempting surgery; (2) in failing to have certain medical equipment and monitoring devices available in the operating room; and (3) in choosing a surgical procedure inappropriate for someone who had by-pass surgery six weeks earlier.
The evidence at trial revealed that (1) drug therapy would likely have been ineffective in Mrs. Kile's case; (2) all necessary medical equipment was in the operating room or in the room next door; and (3) the surgical procedure chosen by Dr. Sauls was an acceptable procedure for Mrs. Kile. The trial judge concluded that Dr. Sauls' actions did not constitute malpractice and rendered judgment in his favor. Plaintiffs appeal this judgment.

LAW
The plaintiffs contend that the trial court erred in concluding that Dr. Sauls did not commit malpractice. In a medical malpractice action, the plaintiff must establish by a preponderance of the evidence that the physician's actions fell below the ordinary standard of care of physicians in his specialty. The plaintiff must also establish a causal relationship between the alleged negligence and the injury sustained. Martin v. East Jefferson General Hosp., 582 *566 So.2d 1272 (La.1991). The trial judge concluded that the plaintiffs failed to carry this burden.
In determining the standard of knowledge, skill and care for a physician, the trier of fact looks to the testimony of other experts in the physician's field. Stein v. Insurance Corp. of America, 566 So.2d 1114 (La.App. 2 Cir.1990), writ denied, 569 So.2d 984 (La.1990). Plaintiffs' experts consisted of Dr. Watts Webb, who had been a member of Dr. Sauls' medical review panel, and Dr. Mitchell Mills, a surgeon from Washington D.C. Both experts concluded Dr. Sauls was negligent, but the trial judge found that Dr. Mills was not a credible witness. The defendants' experts were Dr. Martin O'Neill and Dr. James Knoepp, the other two doctors on Dr. Sauls' medical review panel. They concluded that Dr. Sauls was not negligent.
When medical experts express different views and opinions on whether the standard of care was met in a given case, the reviewing court will give great deference to the findings of the trier of fact. These findings will not be disturbed absent clear error. Stein, supra. After a thorough review of the record, we find that the evidence and testimony supports the conclusion that Dr. Sauls did not commit malpractice. The judgment of the trial court in favor of Dr. Sauls is affirmed.
AFFIRMED.