# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 96-CA-00621-SCT

*JAMES E. MANASCO*

*v.*

*HAZEL RICHIE MANASCO*

**THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-A**

| | |
|---|---|
| DATE OF JUDGMENT: | 05/13/96 |
| TRIAL JUDGE: | HON. SARAH P. SPRINGER |
| COURT FROM WHICH APPEALED: | CLARKE COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | ORBIE S. CRAFT |
| ATTORNEY FOR APPELLEE: | JAMES A. WILLIAMS |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 11/20/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 12/11/97 |

**BEFORE PRATHER, P.J., BANKS AND McRAE, JJ.**

**McRAE, JUSTICE, FOR THE COURT:**

James Manasco and Hazel Ritchie Manasco were granted a divorce on the stipulated ground of irreconcilable differences by the Clarke County Chancery Court on May 13, 1996. To the extent possible, the chancellor divided the property acquired by the couple during their twenty-six year marriage and apportioned their various debts between them. She further awarded Hazel lump sum alimony in the amount of $60,000, payable at the rate of $1,000 per month over a five-year period. After that time, James was obligated to pay periodic alimony at the rate of $1,000 per month. James further was ordered to pay Hazel's attorney fees. Finding no merit to James' assertion that the chancellor erred in ordering a combination of lump sum and periodic alimony, property and debt distribution and attorney fees, we affirm the decision of the court below.

## I.

James and Hazel Manasco were married on April 26, 1969 in Clarke County, Mississippi. They are the parents of two children, James (Jimmy), born April 4, 1971, and Chastity, born November 13,

1976. At the time of these proceedings, both children were emancipated.

The Manascos lived in Clarke County in a house built by James' father. He deeded it to them as tenants by the entirety with full right of survivorship for $10 in 1970, reserving a life estate in the property. James and Hazel assumed the $12,150 principal balance remaining on the mortgage. Hazel estimated that the house was currently worth about $32,000, provided that the necessary roof and interior repairs were made. James' financial statement listed the property value at $40,000 and indicated that $2,500 was still owed on the original mortgage and an $11,799 balance remained on the second mortgage.

James is a long-haul truck driver for Consolidated Freightways. Throughout most of the marriage, he drove locally for Pet Milk Company and Ed Oil Company, earning approximately $30,000 per year. He went to work for Consolidated Freight in 1987 and moved to Texas in 1992, originally on a temporary basis, to make more money. Hazel refused to move because Chastity, the couple's younger child, was still in high school. In Texas, James lived in a house trailer he purchased for $2,500 and valued at approximately $1,500. He testified that it was in poor condition but that he had not been able to afford the necessary repairs.

James was fifty-two years old at the time of the hearing. He suffers from high blood pressure, diabetes, and prostate trouble. He also has neck and vertebrae problems which cause numbness in his arm and fingers. He expressed some concern as to how long he could continue working as a long-haul truck driver. James' income is based on the mileage he drives. He earned in excess of $62,000 in 1994. In 1995, he earned $59,076. During the first four-week pay period of 1996, he earned $3,817.26.

As of July, 1995, James had 8.694 years of contributory credit with the Consolidated Freightways pension fund. Ten "vesting service years" were required to be eligible for the 2% Contribution Based Pension payable upon retirement at age 65. Based on James' nine vesting service years, the accrued value of his benefits, should he earn ten or more vesting service years, was $691.16 per month.

Throughout most of the marriage, Hazel did not work outside the home. Instead, she raised the children, took care of her elderly mother and then, James' father, who lived with them for three years before he died. Before the children were born and from time to time during the marriage, she held a variety of minimum wage store clerk and factory jobs. Forty-eight years old at the time of the hearing, Hazel suffered from phlebitis and blood clots in her legs. She testified that she had not, however, required any treatment for this condition since 1989 or 1990.

## II.

In his sole assignment of error, James contends that the chancellor abused her discretion in ordering him to pay a combination of lump sum alimony, periodic alimony and Hazel's attorney fees in addition to dividing the couple's few assets and many debts between them. He asserts that the awards made to Hazel are unjust and inequitable. Hazel, to the contrary, asserts that the combined awards and division of property do not violate fundamental fairness.

It is within the chancellor's authority to make an equitable division of all jointly-acquired real and personal property. *Ferguson v. Ferguson,* 639 So. 2d 921, 929 (Miss. 1994); *Hemsley v. Hemsley,*

639 So. 2d 909, 913 (Miss. 1994); ***Brown v. Brown***, 574 So. 2d 688, 690 (Miss. 1990). The goal of such distribution of marital property is "not only a fair division based upon the facts of the case, but also an attempt to finalize the division of assets and conclude the parties' legal relationship, leaving them each in a self-sufficient state, where the facts and circumstances permit total dissolution." ***Ferguson***, 639 So. 2d at 929.

The couple has few marital assets: a house valued at approximately $32,000, dwelling contents which James estimates to be worth $7,000, a variety of older vehicles in need of repair, and James' pension plan. Because of Hazel's inability to make any house payments, she requested that the house, as an asset, not be divided. Rather, she and James became joints tenants with the right of survivorship; Hazel was awarded exclusive use and possession of the house; James was required to pay the balance of the first mortgage as well as the second mortgage of $300 per month, the taxes and the insurance; and Hazel was charged with taking care of regular maintenance. She further was given exclusive ownership, use and possession of all the household goods except for James' guns and motorcycle. The chancellor found that James' pension plan was the only other significant asset and awarded Hazel one-half of its value at the time of the divorce. Hazel was awarded the 1990 Oldsmobile and James, the 1989 Honda. James was awarded his trailer in Texas, valued at approximately $1,800, his Merrill Lynch account, and the $1,000 balance in his credit union savings account. Hazel was awarded a $1,000 savings bond.

When considering the appropriateness of an award of alimony in conjunction with the equitable distribution of assets and debts, this Court has explained:

> The equitable distribution of property and awards of alimony comprise the entire field of financial settlement between parties incident to a divorce. "Where one expands, the other must recede." ***Ferguson v. Ferguson***, 639 So. 2d 921, 929 (Miss. 1994)(quoting ***LaRue v. LaRue,*** 172 W.Va. 158, 304 S.E. 2d 312, 334 (1983)(Neely, J., concurring)). Therefore, the equitable division of property, awards of alimony, whether lump sum or periodic, and all other obligations imposed upon a payor spouse should all be considered together by the chancellor. ***Ferguson,*** 639 So. 2d at 929.

***Brooks v. Brooks,*** 652 So. 1113, 1120-1121 (Miss. 1995). Therefore, when reviewing the propriety of the chancellor's finding that James should pay lump sum alimony, periodic alimony and Hazel's attorney fees, this Court must view these amounts in light of the equitable distribution made of the couple's marital property and the apportionment of their debts. Further, we must consider the burden placed on James, the payor spouse, ***Id.***, as well as his right "to lead as normal a life as possible with a decent standard of living." ***Brendel v. Brendel,*** 566 So. 2d 1269, 1272 (Miss. 1990); ***Massey v. Massey,*** 475 So. 2d 802, 803 (Miss. 1985).

The award of alimony and the amount thereof is largely within the discretion of the chancery judge. ***Parsons v. Parsons,*** 678 So. 2d 701, 703 (Miss. 1996); ***Creekmore v. Creekmore***, 651 So. 2d 513, 517 (Miss. 1995); ***Cherry v. Cherry,*** 593 So. 2d 13, 19 (Miss. 1991). Unless it is determined to be manifestly wrong or against the overwhelming weight of the evidence, this Court will not reverse the chancellor's award of alimony. ***Parsons,*** 678 So. 2d at 703; ***Creekmore***, 651 So. 2d at 517. Where the adequacy of an alimony award is at issue, "we will only interfere where the decision is seen to be oppressive, unjust or grossly inadequate so as to evidence an abuse of discretion." ***Monroe v.***

*Monroe*, 612 So. 2d 353, 357 (Miss. 1992); *McNally v. McNally*, 516 So. 2d 499, 501 (Miss. 1987).

## A. Lump Sum Alimony

Hazel was awarded $60,000 in lump sum alimony, payable monthly in $1,000 increments over a five-year period. When reviewing awards of lump sum alimony, this Court considers the factors first articulated in *Cheatham v. Cheatham*, 537 So.2d 435, 438 (Miss.1988): whether the wife has made a substantial contribution to the accumulation of wealth by quitting her job to become a housewife or assist in the husband's business; whether the marriage was long; if the wife's separate income or estate is meager in comparison to that of the payor spouse; and whether she will have any financial security without lump sum alimony. *Creekmore,* 651 So. 2d at 517. *Tilley v. Tilley*, 610 So.2d 348, 352 (Miss.1992); *Smith v. Smith*, 607 So.2d 122, 126 (Miss.1992); *Cleveland v. Cleveland*, 600 So.2d 193, 197 (Miss.1992). "Disparity of the separate estates has continued to be the most compelling factor." *Creekmore,* 651 So. 2d at 517.

James and Hazel Manasco were married for twenty-six years. While they appear to have accumulated few assets during the course of their marriage, Hazel ultimately stopped working to raise the children and take care of James' father for the last three years of his life while James worked as a truck driver. Hazel has no separate income or estate; James, as long as he is able to continue working, has a steady income. The marital assets, regardless of how they are divided between the parties, are insufficient to provide Hazel with any financial security. The chancellor, however, did not abuse her discretion in making the award of lump sum alimony.

## B. Periodic Alimony

Once the lump sum award is paid in full, James further is obligated to provide Hazel with $1,000 per month in periodic alimony. When reviewing awards of periodic alimony, this Court generally follows the guidelines first set forth in *Brabham v. Brabham,* 226 Miss. 165, 176, 84 So. 2d 147, 152 (1955). *Tilley*, 610 So. 2d at 353. Therefore, the following factors must be taken into consideration: the health and earning capacity of the husband; the health and earning capacity of the wife; all sources of income of both parties; the reasonable needs of the wife; the reasonable needs of any children; the husband's necessary living expenses; the estimated income taxes each party must pay; the provisions made for the wife's use of the house, furnishings and automobile; such other facts and circumstances in evidence that might have a bearing on the matter. *Tilley*, 610 So. 2d at 353; *Brabham,* 226 Miss. at 176, 84 So. 2d at 152.

### Health and Earning Capacity of the Husband

James was fifty-two years old at the time of these proceedings and was receiving medical attention for high blood pressure, diabetes, prostate trouble and neck and vertebrae problems. He had been earning approximately $60,000 a year since 1994. Although the record does not indicate the seriousness of his various medical complaints, James appeared to be concerned about how long he could continue long-haul driving.

### Health and Earning Capacity of the Wife

Hazel has a high school education and has worked at several minimum-wage jobs. She suffered from

phlebitis, but had not undergone any treatment for the condition since 1989 or 1990.

## All Sources of Income of Both Parties

James' wages are the only present source of income for the parties.

## The Reasonable Needs of the Wife

In addition to the house payment, Hazel estimated her reasonable needs at $1,500.00 per month.

## The Reasonable Needs of the Husband

At the temporary support hearing, the chancellor found that based on his income, James needed a minimum of $1,600 for his reasonable monthly living expenses.

## The Reasonable Needs of Any Children

Both children are emancipated. James was repaying Jimmy's college loan in the amount of $160.00 per month. Their daughter, Chastity, was working full-time.

## Estimated Income Taxes Each Party Must Pay

The record does not indicate the tax consequences of the divorce.

## Provisions Made for the Wife's Use of the House, Furnishings and Automobile

Although each party was awarded a half interest in the marital dwelling, the chancellor gave Hazel exclusive use and possession of the house. James was ordered to pay for the necessary repairs as well as to maintain the insurance and second mortgage payments. As part of the division of marital property, Hazel also was awarded the contents of the marital dwelling. She was given clear title to a 1990 Oldsmobile Cutlass.

## Other Facts and Circumstances

Relative to their income and assets, Hazel and James have acquired considerable debt. Even though the marital dwelling was only valued at approximately $32,000, the balance on the original FHA loan was $2,500. There was a second mortgage of $12,500. The chancellor ordered James to pay both monthly notes for a total of $380 per month. Hazel was ordered to pay the $100 monthly payments to Sears for the $4,000 lawn mower and $58 to U.S. Gold for the $1,728 still owed on the satellite dish. Each party was responsible for its own credit card debt.

The minimal value of the marital assets provide financial security for neither party and are such that James' lump sum alimony obligation can be met only by monthly installment payments as ordered by the chancellor. Periodic alimony, therefore, is necessary for Hazel after the sixty payments are made on the lump sum alimony. The chancellor did not abuse her discretion in awarding periodic alimony. Only time will tell whether James still will be physically able in five years to drive the milage required to maintain the income level he enjoyed at the time of these proceedings. The appropriateness of the $1,000 per month amount of periodic alimony is reviewable once it is due and payable. Given the facts and circumstances at the time of the proceedings, however, the chancellor did not abuse her

discretion in her determination of the amount of periodic alimony awarded.

## C. Attorney Fees

The chancellor found that Hazel's attorney fees of $3,500 plus expenses of $125 were reasonable, and ordered James to pay them, entering a judgment against him in the amount of $3,625. Attorney fees are appropriate only where a party is financially unable to pay them. *Magee v. Magee,* 661 So. 2d 1117, 1127 (Miss. 1995); *Creekmore v. Creekmore,* 651 So. 2d 513, 520 (Miss. 1995). It is more than apparent from the record that Hazel does not have the money to pay her attorney fees. She owed her sister and brother-in-law $500 for the retainer fee paid to her attorney. We therefore do not hold the chancellor in error for ordering James to pay Hazel's attorney fees.

## III.

James presents a panoply of mathematical calculations which greatly inflate the value of the assets awarded to Hazel and diminish the value of his own holdings in an attempt to label as unfair the combination of property division, lump sum alimony, periodic alimony and attorney fees. However, the chancellor followed the appropriate standards as set forth by this Court for the property division, alimony and attorney fees and did not abuse her discretion in so doing. There are insufficient assets available to provide both parties with great comfort or financial security. Further, James' various physical complaints raise questions about the future income stream available to them. Given the limitations presented to her, the chancellor did as fair a job as possible to provide Hazel with some semblance of financial security while still providing James with a decent standard of living. Accordingly, we affirm the decision the chancery court.

**JUDGMENT IS AFFIRMED.**

**PRATHER AND SULLIVAN, P.JJ., PITTMAN, BANKS, ROBERTS AND MILLS, JJ., CONCUR. DAN LEE, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SMITH, J.**


**DAN LEE, CHIEF JUSTICE, DISSENTING:**


Believing that the chancellor abused her discretion in the award and amount of lump sum alimony coupled with the award and amount of periodic alimony to Hazel Manasco ("Hazel"), I respectfully dissent. Under the facts of this case, considering the division of property, the award of periodic and lump sum alimony was excessive. When considering the appropriateness of an award of alimony in conjunction with the equitable distribution of assets, we have explained that

> The equitable distribution of property and awards of alimony comprise the entire field of financial settlement between parties incident to a divorce. "Where one expands, the other must recede." *Ferguson v. Ferguson*, 639 So. 2d 921, 929 (Miss. 1994) (quoting *LaRue v. LaRue,* 172 W.Va. 158, 304 S.E. 2d 312, 334 (1983) (Neely, J., concurring)). Therefore, the equitable division of property, awards of alimony, whether lump-sum or periodic, and all other

obligations imposed upon a payor spouse should all be considered together by the chancellor. *Ferguson,* 639 So. 2d at 929.

*Brooks v. Brooks*, 652 So. 2d 1113, 1120-1121 (Miss. 1995).

In the instant case the chancellor awarded Hazel lump sum alimony in the amount of $60,000, payable at $1,000 per month over a five year period; periodic alimony, beginning at the end of that five year period, in the amount of $1,000 per month; the sole and exclusive use of the marital home, valued at $32,000, with James Manasco ("James") required to pay both mortgages, a combined amount of $380 per month, the taxes and insurance on the home; the contents of the dwelling which James values at $7000; a 1990 Oldsmobile; one/half of James' pension; and a $1,000 savings bond. James was awarded a trailer home in poor repair, valued at $1,800, his guns, a motorcycle; a 1989 Honda; and the $1,000 balance in his credit union savings account. In light of our law as delineated in *Brooks*, whereby we consider the property division and alimony awards in toto, the award of both lump sum alimony and periodic alimony, and the amounts thereof, in light of the above demonstrated disparity in the property division, is clearly excessive and inequitable.

In addition to the excessive amounts awarded in both lump sum alimony ($60,000, payable at $1,000 per month for five years) and periodic alimony, the manner by which the chancellor coupled them together does not allow James to seek a modification in spousal support, based upon a material and substantial change in the circumstances of either party, for at least five years. Because lump sum alimony is vested and not subject to modification, James must pay the entire amount. Only then can he seek a modification of the unreasonable amount of $1,000 per month awarded in periodic alimony. If James experiences a material change of circumstance with respect to his income within the next five years, he is then forced to live on seriously limited income while his former wife has a minimal standard of living not available to him. This too is inequitable.

For the foregoing reasons, the chancellor abused her discretion and should be reversed.

**SMITH, J., JOINS THIS OPINION.**